UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOE,

Plaintiff,

v.

ANDERSON ET. AL.,

Defendant.

_____/

Case No. 15-13852

SENIOR UNITED STATES DISTRICT
JUDGE ARTHUR J. TARNOW

MAGISTRATE JUDGE MONA K.
MAJZOUB

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [29]

Plaintiffs filed a complaint against Defendants on November 2, 2015 [1], alleging  First Amendment retaliation under §1983. Plaintiff filed a second amended complaint on February 18, 2016 [22], adding facts and removing the Michigan Department of Corrections as a party. Defendants filed a Motion for Summary Judgment based on a failure to exhaust remedies was filed on March 8, 2016 [29]. Plaintiffs responded on March 29, 2016 [33] and Defendants replied on April 29, 0216 [40]. The Court held a hearing on the Motion on July 25, 2016. For the reasons stated below, this Motion is **GRANTED in part and DENIED in part.** Specifically, Motion is granted as with respect to all of John Doe 2 and John

Doe 8's claims. Additionally, Defendants Hoogewind, McLeod, Rogers, Sherwood and Schooley are dismissed from the case because none of the claims against them were properly exhausted. Summary Judgment is denied for several of Plaintiff's claims as discussed below.

## FACTUAL BACKGROUND

Plaintiffs, during the spring of 2013, were under the age of 18 and housed in adult prisons in Michigan. At this time, John Doe 1 participated in an inquiry conducted by the Inter-American Commission on Human Rights, which resulted in a hearing focused on the violations of the human rights of Michigan children incarcerated in adult prisons. Following the exposure of abuse by John Doe 1's testimony and associated written submission to the Inter-American Commission on Human Rights, Plaintiffs filed litigation on behalf of themselves, and as class representatives on behalf of children confined in adult prisons operated by the Michigan Department of Corrections (MDOC).

Plaintiffs consist of nine John Does who allege retaliation resulting from their exposure of the abuse of youth housed in MDOC facilities by MDOC staff, or of abuse that MDOC staff facilitated or failed to intervene to prevent, through the testimony before the Inter-American Commission on Human Rights and in their civil rights litigation in Washtenaw Circuit Court and in Federal Court in the

Eastern District of Michigan. Defendants consist of members of MDOC staff who are alleged to have engaged in various forms of retaliation against the Plaintiffs, including, *inter alia*, "prolonged isolation, destruction of legal and other property, denial of visits, false misconduct tickets, excessive and destructive room searches, verbal harassment and threats, excessive pat-downs, interference with attorney communications, knowingly placing Plaintiffs in situations likely to cause them harm, and intentional disclosure of Plaintiffs' identities within the prison system, making them more vulnerable to abuse." [22 at ¶6].

Each specific allegation of each Plaintiff and their grievance process will be discussed in detail below.

## ANALYSIS

### 1. EXHAUSTION IN GENERAL

Defendants allege that Plaintiffs have failed to exhaust available administrative remedies, as required by the Prison Litigation Reform Act (PLRA). Under the PLRA, prisoners filing claims in federal court concerning prison conditions must exhaust "all 'available' remedies" before their claims may be heard. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). For exhaustion to be proper, Plaintiffs must comply with an agency's procedural rules for grievances, with the boundaries of proper exhaustion being defined by the prison's requirements. *See*

*Woodford v. Ngo*, 548 U.S. 81, 90 (2006); *Jones v. Bock*, 549 U.S. 199, 218 (2007). It falls to the District Courts, with some reasonable discretion, to determine if the "exhaustion requirement has been substantially met before proceeding to the merits of any prisoner claims." *Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

When considering exhaustion, summary judgment is only appropriate if Defendant can "establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion," and the Court must look at the evidence "in the light most favorable to the party opposing the motion." *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011).

## 2.  MDOC GRIEVANCE POLICY

Per MDOC policy directive, when grieving "alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant," a prisoner must follow these requirements:

> (1) Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of the grievable issue. [29-3 at ¶P]

> (2) If the issue is not resolved, the grievant may file a Step I grievance. The **Step I grievance must be filed within five business days after the grievant attempted to resolve the issue** with appropriate staff *Id.*

(3) Information provided [by the prisoner in the grievance form] is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). **Dates, times, places, and names of all those involved in the issue being grieved are to be included**. [29-3 at ¶R].

(4) A grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I or if s/he did not receive a timely response. **To file a Step II grievance, the grievant must request a Prisoner/Parolee Grievance Appeal (CSJ-247B) from the Step I Grievance Coordinator and send the completed form to the Step II Grievance Coordinator designated for the facility, field office, or other office being grieved within ten business days after receiving the Step I response or, if no response was received, within ten business days after the date the response was due, including any extensions**. [29-3 at ¶BB].

(5) **A grievant may file a Step III grievance if s/he is dissatisfied with the Step II response or does not receive a timely response**. To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form (CSJ-247B), to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due, including any extensions. [29-3 at ¶FF]

(6) The **total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days** unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II. [29-3 at ¶S].

Additionally, if the conduct alleged includes staff sexual misconduct:

> **All grievances alleging such conduct [staff sexual misconduct]**, whether filed with the inspector or a CFA or FOA grievance coordinator, shall be referred to the Internal Affairs Division for review as set forth in PD 01.01.140 "Internal Affairs**… if the**

> **grievance is determined to fall within the jurisdiction of the Internal Affairs Division; in such cases, an investigation shall be conducted in accordance with PD 01.01.140 and the grievant notified that an extension of time is therefore needed to respond to the grievance.** The Manager of the Internal Affairs Division or designee also shall notify the Warden or FOA Deputy Director or designee, and the inspector or grievance coordinator as appropriate, if it is determined that the grievance is not within the jurisdiction of the Internal Affairs Division; in such cases, the grievance shall continue to be processed as a Step I grievance in accordance with this policy.

[29-3 at ¶Q].

### 3. PLAINTIFF JOHN DOE 1.

#### a. FACTUAL ALLEGATIONS IN THE COMPLAINT

In the Second Amended Complaint filed on February 18, 2016 [22], John Doe 1 alleged the following:

#### i. BELLAMY CREEK (IBC)[1] DEFENDANT COBURN

John Doe 1 (JD 1) alleges that, after testifying for the Inter-American Human Rights Commission on sexual abuse of juveniles in adult Michigan prisons, Defendant Coburn performed the following retaliatory acts: (1) Coburn entered JD 1's cell on daily basis to look through JD 1's correspondence and legal property; (2) Coburn falsely announced over loudspeaker that JD 1 was HIV positive; (3) Coburn destroyed JD 1's property with co-Defendant Arp.

---

[1] A glossary is attached on page 56 detailing the various institutions and their abbreviations.

Additionally, after JD 1 filed suit alleging violations of his rights arising from MDOC's and its officials' and employees' deliberate indifference to the safety of youth in their care and custody, Coburn (1) entered JD 1's cell and removed all of his legal materials; (2) along with co-Defendant Arp, Coburn targeted JD 1 for pat down searches and made open statements and comments identifying JD 1 as a Plaintiff the pending litigation, which exposed him as a person reporting sexual assaults by other prisoners and staff. [22 at ¶¶49-61].

### ii.  IBC DEFENDANT ARP

JD 1 alleges that after testifying for the Inter-American Human Rights Commission on sexual abuse of juveniles in adult Michigan prisons, Defendant Arp, along with Defendant Coburn, destroyed JD 1's property.

JD 1 alleges that, after he filed suit alleging violations of his rights resulting from MDOC's and its officials' and employees' deliberate indifference to the safety of youth in their care and custody, Arp (1) along with co-Defendant Coburn, targeted JD 1 for pat down searches and made open statements and comments identifying JD 1 as a Plaintiff the pending litigation, exposing him as a person reporting sexual assaults by other prisoners and staff; (2) approached JD 1 in the library and demanded  that JD 1 handover a letter to his attorney. JD 1 was given a 15 day loss of privilege and was banned from the law library for 6 months when he

refused to surrender the letter. JD 1 also lost recreation privileges, phone calls, and visits as further consequences. [22 at ¶¶49-61].

### iii.  IBC DEFENDANT WARDEN MCKEE

JD 1 also alleges that Defendant Warden McKee "engaged in unlawful retaliation against [him]." [22 at ¶43]. However, there are no factual allegations detailing Warden McKee's actions in the amended complaint, and there is no evidentiary support for this claim. Accordingly, summary judgment is granted as to this claim for lack of the requisite exhaustion.

### b.  EVIDENCE PRESENTED OF GRIEVANCES AND EXHAUSTION

In his response, JD 1 identifies one specific grievance and supplies an affidavit stating why other grievances were not filed pertaining to his other allegations.

### i.  IBC-1306-1534-17Z [29-E]- AGAINST COBURN AND MCKEE

Grievance IBC-1306-1534-17Z was filed on June 11, 2013 concerning the allegation that Coburn announced over the loudspeaker that JD 1 was HIV positive. The grievance alleges that, on May 28, 2013, Coburn "stated over the intercom for all of the unit to hear that I was HIV/AIDS positive and that I needed to start my treatment." [29-6 at 737]. The grievance further states that "[JD 1]

feel[s] like officer Coburn purposely put my life in jeopardy with defamation of character." *Id*. This grievance was appealed through step III. [29-6 at 734].

Defendants argue that this grievance was not properly exhausted, because it was filed before participation in litigation began, does not allege that Coburn acted in retaliation for JD 1's participation in the litigation, and there was therefore no fair notice of a First Amendment retaliation claim in that grievance. *Bell v. Konteh*, 450 F. 3d 651, 654 (6th Cir. 2004) (internal citations omitted).

However, as JD 1 points out, the Amended Complaint contemplates the protected activity to include the time when JD 1 complained about sexual abuse, met with counsel, and testified before the Inter-American Commission regarding his abuse, and is thus not an issue to be decided in a motion alleging failure to exhaust.

With respect to the argument that JD 1 failed to exhaust the grievance because its content failed to provide fair notice of the alleged misconduct that forms the basis of the constitutional claim, Plaintiff asserts that the standard applied to whether prisoners have described the alleged misconduct sufficiently in their grievances is "not a particularly strict" standard, and prisoners are not required to "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory," and that instead only "fair notice

[must be] given." *Bell*, 450 F.3d at 654. This is consistent with the practice of liberally construing *pro se* prisoners' filings. *Id*. Other Courts have held that the term "retaliation" does not need to be included in a grievance in order to properly exhaust a claim for retaliation. *See Jackson v. Huss*, No. 1:14-CV-426, 2015 WL 5691026, at *7 (W.D. Mich. Sept. 28, 2015) (finding that the allegations that Defendant was "not treating [the prisoner] because of my complaints against the prison" was sufficient to put prison officials on notice that Plaintiff was asserting a retaliation claim).

In the grievance at issue, JD 1 does not specifically use the word "retaliation" and does not include any allegations that even under a liberal pro se reading could be construed as retaliation. The claims relate to a defamation of character but at no point does the grievance even allude to a possible retaliation claim. Therefore, summary judgment is granted on this grievance against Coburn.

JD 1 also alleges that McKee is an appropriate party to this retaliation claim in this grievance. McKee was the Warden who denied the grievance at all three steps, however he is not mentioned by name in the grievance, and there are no allegations in the amended complaint detailing the actions taken by the Warden that were retaliatory. Because Plaintiff has failed to show how the grievance is applicable to McKee, he was not fairly put him on notice for a retaliation claim.

The mere denial of a grievance, without more, should not be sufficient to raise a retaliation claim, and this grievance is unexhausted as to Defendant McKee.

### ii. AFFIDAVIT- EVIDENCE AGAINST ARP AND COBURN

As stated in JD 1's affidavit, following the filing of his first grievance against Coburn, JD 1 "began to experience an excessive number of retaliatory room searches and verbal harassment" and he reasonably concluded that filing any additional grievances challenging institutional staff for the continued retaliation would be futile and, render him a target for further harassment and threats, exposing him as a John Doe Plaintiff in this proceeding [29-7].

The Sixth Circuit has "excused a prisoner's lack of complete compliance [with the grievance process] when the improper actions of prison officials render the administrative remedies functionally unavailable." *Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 577 (6th Cir. 2014), *cert. granted sub nom. Simmons v. Himmelreich*, 136 S. Ct. 445, 193 L. Ed. 2d 346 (2015), and *aff'd and remanded sub nom. Simmons v. Himmelreich*, 136 S. Ct. 1843 (2016). To determine whether the process was functionally unavailable, the Court "must ask whether [the prison official's] threats and actions would 'deter a person of ordinary firmness from [continuing with the grievance process].'" *Id* (citations omitted).

The last instance of alleged retaliation resulted in JD 1 being accused of being HIV positive, rendering him subject to the threats of multiple prisoners. Plaintiff not unreasonably feared further exposure as a John Doe Plaintiff resulting in still further harassment and threats. There is good reason why anonymity is critical in proceedings such as this. Identification as a John Doe Plaintiff would expose him as having reported physical abuse committed by prisoners and MDOC officials, as well as an individual who had been raped. It is a question of fact whether a person of ordinary firmness would not continue the grievance process to protect exposure of their identity.  Therefore, the affirmative defense of failure to exhaust the claims of alleged retaliation by Arp and Coburn is rejected because questions of fact remain regarding a person of ordinary firmness would continue the grievance process or not.

### 4.  JOHN DOE 2 [JD 2]

#### a.  FACTUAL ALLEGATIONS IN THE COMPLAINT

In the Second Amended Complaint, JD 2 alleged the following:

##### i.  MICHIGAN REFORMATORY (RMI) DEFENDANT SCHOOLEY

JD 2 alleges that, after the filing of the lawsuit, Schooley confiscated JD 2's journal which detailed on going abuse and harassment, and delivered it to the Assistant Attorney General representing the MDOC in the lawsuit. [22 at ¶65].

### ii. RMI DEFENDANTS ROGERS AND HOOGEWIND

JD 2 alleges that, after the filing of the lawsuit, Defendants Rogers and Hoogewind verbally assaulted him and made threats concerning his participation in the current litigation. Additionally, Rogers and Hoogewind are alleged to have publically disclosed JD 2's identity and his participation in litigation concerning ongoing sexual abuse of juveniles by prisoners and MDOC officers. When JD 2 complained that he was receiving threats from other prisoners because of disclosure of his identity, he was issued a false misconduct, and was subject to continued verbal harassment by Rogers and Hoogewind [22 at 66].

### iii. IONIA CORRECTIONAL FACILITY (ICF) DEFENDANTS SHERWOOD, MARTENS AND MCLEOD

JD 2 was transferred to administrative segregation at ICF in March 2015. JD 2 alleges that Defendants Sherwood, Martens and McLeod harassed him as a result of his participation in the pending litigation, and mocked him for being sexually abused. [22 at ¶68]. These Defendants are also alleged to have performed several retaliatory acts, including issuance of false misconducts, placement of JD 2 on food loaf, performing excessive room searches resulting in destruction of JD 2's property, and reading JD 2's legal mail. [22 at ¶69]. JD 2 alleges that Sherwood refused to give him grievance forms for these actions, and told him to put it in his lawsuit. *Id*.

### b. EVIDENCE PRESENTED OF GRIEVANCES AND EXHAUSTION

#### i. ICF DEFENDANTS: GRIEVANCES AGAINST DEFENDANTS MARTENS, MCLEOD, SHERWOOD AND STAMBAUGH

##### 1. EXHIBIT 33-5A AND 33-5B

These exhibits contain the same handwritten grievance concerning the destruction of property and legal mail. However, retaliation is not mentioned, and the names of the named ICF Defendants are not stated. This grievance was rejected as excessively vague, resulting in a procedural default, so it cannot be considered properly exhausted under the PLRA and summary judgment is granted as to this grievance. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006).

##### 2. ICF-2015-10-1906-17i [33-5E]

In this grievance, JD 2 requested protection from Miniard because he identified his as a JD. None of the named Defendants is mentioned in grievance. Per evidence provided by Defendant, the grievance resulted in JD 2 being placed in administrative segregation, and thus out of harm's way. JD 2 reportedly was advised that, when released to the general population, if he continued to feel there was a threat to his safety, he could once again request protection and another investigation would be conducted at that time. Therefore the grievance was resolved, and no named Defendants were placed on notice of any new or continuing grievance. Summary judgment is granted as to this grievance.

### 3. ICF-2015-09-1617-03b [33-5E]

JD 2 asserted a Grievance against Powell (not named as a Defendant herein) for his alleged failure to pick up JD 2's legal mail. The Response by the MDOC states that the grievance was resolved because video footage was reviewed that showed Powell making a legal mail run at JD 2's cell. JD 2 was advised of this and purportedly stated "ok, I will resolve the grievance." The grievance appears to be resolved, and no named Defendants were placed on notice concerning the grievance. Summary judgment is granted as to this claim.

### i. RMI DEFENDANTS - GRIEVANCES AGAINST DEFENDANTS ROGERS, HOOGEWIND AND SCHOOLEY

### 1. EXHIBIT 33-5F

Plaintiff alleges that he filed a step III grievance for retaliation at RMI after his transferred to ICR, but that the grievance was returned to him. However, all that is provided concerning this particular grievance is a document requesting Plaintiff to provide a date for the incident, which does not support the allegation in the response or the allegations in the complaint. Therefore, this exhibit does not support exhaustion against the RMI Defendants and summary judgment is granted as to this claim.

### 2.  RMI-1505-10978-19D [40-3 AT 16]

JD 2 alleges that this complaint was a grievance against Hoodgewind and Rogers for destruction of property. However, the actual grievance named CO Greer as the person who packed the property, and the response stated that Officers Hoogewind and Burge worked the shift at issue in JD 2's complaint. While JD 2 failed to allege any wrongdoing on the part of Hoogewind, Rogers or Schooley in his grievance, their identification placed them on notice of the alleged retaliation claims. However, the grievance was resolved at step II and there was no appeal to step III and was, accordingly, subject to a procedural default. Therefore, this exhibit does not support exhaustion of the claim against the RMI Defendants and summary judgment be granted as to this grievance as well. Given that summary judgment has been granted as to all of JD 2's claims, JD 2 is dismissed from the case.

### 5.  JOHN DOE 3 [JD 3]

#### a.  FACTUAL ALLEGATIONS IN THE COMPLAINT

In the Second Amended Complaint, JD 3 alleges the following:

##### i.  ST. LOUIS CORRECTIONAL FACILITY (SLF) DEFENDANT PENNELL

JD 3 alleges that, following his entry into the litigation regarding the sexual abuse of juvenile prisoners in adult MDOC facilities, his cell was targeted for

searches. After these searches were performed, JD 3 would return to a cell where his legal documents were spread out in the open and family photographs were discarded in the toilet. [22 at ¶76]. JD 3 was advised that Defendant Pennell had performed these searches. *Id*. JD 3 further alleges that Defendant Pennell publically identified him as a Plaintiff in the litigation, and commenced a pattern of harassment that included requiring him to submit to a shakedown every time he encountered Pennell, that excessive room searches were conducted during which Pennell once required JD 3 to be strip searched, and that JD 3's journal, which had been used to record notes concerning the pending litigation, was removed from his cell. [22 at ¶77].

### ii. IBC Defendant McKee

JD 3 further alleges that, after his transfer from SLF to IBC, Defendant McKee authorized and directed that a sign to be posted outside his cell that read 'do not interview.' [22 at 78]. This was understood by staff to identify JD 3 as a Plaintiff in the lawsuit, which is the alleged to have been subsequently disclosed to other prisoners. *Id*.

### iii. IBC Defendants Hall, Hammer and Stump

Defendants Hall, Hammer and Stump are alleged to have taunted JD 3 concerning his participation in litigation, physically assaulting him on multiple

occasions, and conducting excessive searches of his cell, ripping up his legal documents and destroying his property [22 at 79]. JD 3 alleges that, on October 10, 2015, after he submitted grievances concerning these occurrences, Defendants Hall, Hammer and Stump threatened to issue false misconducts for insolence. *Id*. JD 3 further alleges that, on October 21, 2015, he was ordered to 'cuff up' and was placed in a closet while Defendant Stump searched his cell. [22 at 80]. When JD 3 was returned to the cell, Defendant Hammer falsely claimed that he found a weapon in Plaintiff's cell, resulting in the issuance of a misconduct charge and Plaintiff losing his programming and job, endangering his parole. *Id*.

### b. EVIDENCE PRESENTED OF GRIEVANCES AND EXHAUSTION

#### i. IBC-1410-3045-17C [33-6B]- AGAINST DEFENDANTS HALL AND MCKEE

This grievance concerns JD 3's allegations that, when JD 3 asked Officer Hall if he could call the kitchen for a different tray because his cake looked like someone had taken bites out of it, Hall responded with an obscenity, "fuck you," and that when JD 3 further pressed as to why he was being so disrespectful, Hall replied "eat a dick" and referred to his genital area. [29-8 at 754; 29-8 at 751-755]. In the grievance, JD 3 states that "I feel that Officer Hall's behavior was highly disrespectful and uncaused for, and also I feel Officer Hall treated me less than human because I'm a prisoner." *Id.* This grievance was referred to the PREA

office, and referred to Internal Affairs for investigation, where they found insufficient evidence to substantiate the grievance. JD 3 appealed through step III. JD 3 contends that this grievance was exhausted as to both McKee and Hall.

Defendant argues that the grievance is not exhausted because it does not concern any of the specific allegations against Hall in the amended complaint, and fails to allege that the conduct reflected a retaliatory purpose. Therefore, it is argued that the grievance failed to provide Defendant with fair notice of the alleged mistreatment or misconduct underlying the constitutional claim. *Bell*, 450 F. 3d at 654.

Plaintiff alleged that "I feel Officer Hall treated me less than human because I'm a prisoner." This is not sufficient even under a lessened standard to put Defendant on notice for a first amendment retaliation claim. *Bell*, 450 F. 3d at 654.

Additionally, Plaintiff's response brief does not address the argument that the allegations in the complaint do not correspond to the grievance he argues was exhausted. There were no allegations of general sexual harassment in the complaint, rather the harassment alleged at taunts about JD 3 participation in the litigation. Without a more specific retaliation purpose regarding participation in the litigation, Defendant Hall was not on notice from this grievance as to the allegations in the complaint.

Warden McKee was not named in the grievance, and merely signed off on the form. Plaintiffs argue that the signing of the grievance implicates him in the retaliation, but there are no facts alleged to support this, and there is no case law presented to support the argument that a person who signs off on a grievance which is the basis of a retaliation law suit can also be liable for that retaliation. If this were the rule, Wardens and other signatories would become automatically subject to suit merely as a result of their signature on the form.

Considering the facts alleged in the grievance against Hall and McKee, administrative remedies were not exhausted as to Hall and McKee in this grievance.

###    ii.   IBC-1505-1274-17B [33-6A]- AGAINST DEFENDANTS HAMMER, STUMP AND MCKEE

In the grievance, JD 3 alleges that "officers of unit 5" searched his room on May 11, 2015 between 6:30pm and 8:30pm and "and mixed my legal work concerning a class action lawsuit with my bunky's legal work…the officers have been searching my room a lot more usual and completely destroying it since I attended a class meeting at this facility. This is [an act] of retaliation and I demand that it stops." [33-7; 29-8 at762-765].

It is undisputed that JD 3 appealed this grievance through step III. Defendant argues that the grievance was not properly exhausted because it failed to

specifically name those alleged to have committed the grievance against him, as required by MDOC policy [29-3 at ¶R], and that therefore the grievance was subject to a procedural defaulted and cannot have exhausted the claim. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (boundaries of proper exhaustion are formed by MDOC's policy).

However, as Plaintiffs point out, Courts refuse to enforce procedural requirements when prison officials declined to enforce them in the first instance. *Id* at 325. In this instance, the grievance was rejected for a lack of evidence or information that substantiates the allegations, and was on the basis of an unforgiven procedurally default. Because it was rejected on the merits, the Court must determine whether the grievance was otherwise properly exhausted.

While it is true that the MDOC's policy states that names should be specified, Courts have held that, so long as the facts contained in the grievances allow a Defendant to be identified, exhaustion is still possible. *See e.g. Binion v. Glover*, No. 07-13443, 2008 WL 4097407, at *4 (E.D. Mich. Aug. 29, 2008); *Calhoun v. Hill*, No. 07-11613, 2008 WL 4277171, at *3 (E.D. Mich. Sept. 17, 2008). In this grievance, JD 3 states that the complaint concerns "officers of unit 5" who were working on a certain date and a certain time. These allegations are adequate to put officers on notice concerning the grievance.  Therefore, this

grievance is exhausted as to Hammer and Stump. However, McKee was not an officer of unit 5 and therefore this claim should not be considered exhausted as to McKee.

### iii.  IBC-15-05-1312-17z [33-6C]- AGAINST DEFENDANT STUMP

JD 3 alleges that an identifier was not provided in the resolution of this grievance.  However, the allegations match the substance in grievance IBC-1505-1312-17z submitted by Defendant. [40-4 at 1388]. In this grievance, JD 3 alleged that Stump hit JD 3 in the head with the door and made threatening statement: "what's up bitch number 1." [40-4 at 1388]. JD 3 asserts that he only received a notice of receipt for grievance at step I- and without any grievance identifiers and didn't know which of the various grievances he filed were being responded to, so could not appeal and received no adequate response from the facility.

Per Section 1997e(a), a prisoner is required to exhaust "such remedies as are available," which the Sixth Circuit has held to mean "that a prisoner is required to exhaust only those procedures that he is reasonably capable of exhausting." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 625 (6th Cir. 2011). While Defendants submit evidence that there was a step II appeal response, they fail to produce a step II grievance form. The evidence presented creates a question of fact whether JD 3 was reasonably capable of exhausting this grievance. If he was

provided with the step II response with the grievance ID number, then he could have been reasonably required to exhaust. However, Plaintiff asserts that he did not receive an identifier for this grievance, and that he merely received a receipt concerning this specific ID number grievance without any idea of which of his multiple grievances submitted it was referring to. Therefore, summary judgment on the retaliation claim against Stump is denied, because there is a question of fact concerning whether he reasonably was capable of exhausting this grievance.

### iv.   IBC-15-10-2925-28e [29-8]-- AGAINST DEFENDANTS PENNELL, HALL, HAMMER AND STUMP

In this grievance filed on October 26, 2015, JD 3 alleges that he was experiencing retaliation as a result of his status as a John Doe, stemming from his filing of grievances challenging excessive searches of his cell, excessive shakedowns and strip searches, the public consideration of his legal documents, and by publically identifying him as a John Doe complainant. [29-8]. This grievance was denied at step I on a procedural basis of exceeding the time limits applicable to filing a grievance on these issues. JD 3 appealed this decision through step III, but the rejection on the basis of timeliness was upheld.

As JD 3 pointed out in his step II appeal, this conclusion was an error on the part of MDOC. While his grievance does mention dates from May, which would fall outside the requirements of timeliness imposed by the regulations, this

reference refers to prior grievances filed that JD 3 alleged to be the cause of retaliation he was currently experiencing. As clearly provided in the grievance, the date of October 21, 2015 was the date of the retaliation that he was challenging in the grievance. Therefore, his grievance was timely filed within the five day time period established by MDOC policy, and JD 3 properly exhausted the grievance by appealing it through step III. Therefore, summary judgment is denied as to this grievance against Defendants Pennell, Hall, Hammer and Stump.

### 6. JOHN DOE 4 [JD 4]

#### a. FACTUAL ALLEGATIONS IN THE COMPLAINT

In the Amended Complaint, JD 4 raised the following claims.

##### i. MACOMB (MRF) DEFENDANT GOLLNAST

JD 4 alleged that Defendant Gollnast rifled through his legal property, and further that he announced to prisoners and staff that JD 4 was claiming to have been raped by prisoners and staff, and that he was Plaintiff in a lawsuit concerning these allegations. [22 at ¶86].

##### ii. IBC DEFENDANT MCKEE

JD 4 also alleged that Defendant Warden McKee "engaged in unlawful retaliation against [him]." [22 at ¶43]. However, there are no factual allegations implicating Warden McKee in the amended complaint, and he is not even referred

to in the response brief. Therefore, any retaliation claim against McKee must be dismissed for failure to exhaust.

### b.  EVIDENCE PRESENTED OF GRIEVANCES AND EXHAUSTION

JD 4 did not pursue the grievance process because, per his affidavit [33, Ex. 7], after Gollnast's actions, fellow prisoners harassed him about what happened and threatened him about what they would do if the information concerning his involvement was in fact true. Per his testimony, this humiliated JD 4, and made him fear filing a grievance because of the actions of other prisoners he would face once he was identified as a John Doe Plaintiff complaining of sexual assault. Because of the nature of the grievance process, he feared that anyone could learn about his grievance, the details about his sexual assault allegations, and his involvement in the case.

Because of the threats he faced, and his past experiences of rape and abuse at the hands of MDOC staff and prisoners, a person of ordinary firmness could be deterred from proceeding with the grievance process. Therefore, summary judgment is denied on this claim because of an issue of fact remains. *Himmelreich,* 766 F.3d at 577.

### 7.  JOHN DOE 5 [JD 5]

### a.  FACTUAL ALLEGATIONS IN THE COMPLAINT

In the amended complaint, JD 5 alleges that retaliation occurred after his participation in the lawsuit.

### i.  IBC DEFENDANT COBURN

JD 5 alleged that Defendant Coburn: (1) informed JD 5 that he knew he was filing a lawsuit and that, as a result, his stay would be more difficult; (2) identified JD 5 to other prisoners and staff, informing them of the details of complaint; (3) along with Defendant Arp, threatened JD 5 about his participation in the lawsuit, informing him that if it was not abandoned, he would never go home, would not be called out for work and program details, and that other prisoners would be encouraged to take action against him [22 at ¶94-96]. After experiencing an assault by a prisoner shortly after this incident, JD 5 was kept in administrative segregation for 9 months because he warned his assaulter that, if he ever hit him again, he would "slap him." [22 at ¶98].

### ii.  IBC DEFENDANT MCKEE

JD 5 further alleged that Defendant McKee authorized the placement of a 'do not interview' sign outside JD 5's door, which alerted the staff that JD 5 was a John Doe Plaintiff in the law suit. [22 at ¶94].

### iii.  IBC DEFENDANT ARP

Defendant Arp, with Coburn, was accused of threatening JD 5 about his participation in the lawsuit, and allegedly informed him that, if he not drop it, he would never go home, would not be called out for work and program details, and other prisoners would be encouraged to take action against him. After being assaulted shortly after this incident by a fellow prisoner, JD 5 was kept in administrative segregation for 9 months for warning his assaulter that, if he ever hit him again, he would "slap him." [22 at ¶98].

### iv.  IBC DEFENDANT ROSS

JD 5 further alleged that Defendant Ross refused him food, and informed other prisoners they should pay attention to what happened to JD 5 and decide if snitching and suing the MDOC was worth it. [22 at ¶99].

### v.  IBC DEFENDANT ANDERSON

It was alleged the Defendant Anderson searched JD 5's cell, going through his legal work, reading from it out loud to staff and prisoners while JD 5 showered – directly leading to threats and harassment by prisoners. [22 at ¶101].

### b.  EVIDENCE PRESENTED OF GRIEVANCES AND EXHAUSTION

### i.  AFFIDAVIT- AGAINST IBC DEFENDANTS

In an affidavit [33 at Ex. 8A], JD 5 states that he filed step I grievances against IBC officers for the following: (1) "retaliatory harassment after they called

me a rat and a liar, and made threats about my involvement in the sexual abuse litigation;" (2) filed a grievance "for excessive use of solitary confinement" and never received a response or a grievance identifier but was interviewed; (3) filed two grievances on the Defendants at IBC for retaliatory harassment and destructive room searches and again never received a response. He further states that he knew he wouldn't be allowed to proceed to step II without an identifier, so he believed there was no way to continue the grievance process. Also, while he contemplated inquiring about the grievances for which he hadn't received a response, he feared being placed on grievance restriction. He feared further reporting of abuse and harassment because of the mistreatment he had received in response to his prior grievances. These facts both support a finding that remedies were not reasonably available, and that a person of ordinary firmness would be deterred from completing the exhaustion of these grievances. *Himmelreich*, 766 F. 3d at 577.

Plaintiff asserts that his affidavit satisfies the exhaustion for claims: against ICF Defendants, including Arp, for retaliatory harassment; against McKee for retaliatory placement in solitary confinement; and against ICF Defendants for retaliatory placement in solitary confinement [See 33-4 at 1162]. Defendants assert that these allegations are untrue, and even if true, show that JD 5 did not properly

exhaust any of these grievances. Because of the dispute of fact, summary judgment should not be granted on JD 5's claims against any of the Defendants.

### 8. JOHN DOE 8

#### a. FACTUAL ALLEGATIONS IN THE COMPLAINT

After filing the lawsuit, JD 8 alleges the following retaliatory actions:

##### i. ECF DEFENDANT ERWAY

JD 8 alleges that he complained to Erway about harassment that included: excessive searches of his cell; leaving his legal property strewn around the room; removal and destruction of his personal property; and being singled out for misconduct tickets. Erway is alleged to have retaliated by arranging for JD 8's transfer. [22 at ¶107-108].

##### ii. IBC DEFENDANT ARP AND COBURN

JD 8 alleges that Defendants Arp and Coburn verbally harassed and threatened him concerning the litigation in front of other prisoners and staff, causing him to be afraid to report abuse and to participate in the litigation. [22 at ¶110].

##### iii. IBC DEFENDANT WALTERS

JD 8 alleges that Defendant Walters refused his request for help and protection, stating that JD 8 was a JD so she couldn't talk to him. *Id.*

#### iv.  IBC DEFENDANT MCKEE

JD 8 also alleges that Defendant Warden McKee "engaged in unlawful retaliation against [him]." [22 at ¶43]. However, once again, there are no specific factual allegations pled against Warden McKee in the amended complaint. This claim has not been exhausted because McKee was never placed on notice of any alleged retaliation and therefore summary judgment is granted on this claim.

#### b.  EVIDENCE PRESENTED OF GRIEVANCES AND EXHAUSTION

##### i.  IBC-1510-2924-17C- AGAINST DEFENDANTS ARP, COBURN AND WALTERS

On September 28, 2015, JD 8 filed a grievance that alleged the following: "I have been targeted and harassed by Cos Lempke, Arp, Coburn and Walters…[they] have repeatedly called me out just to harass me about people I associate with and about my sexual orientation. They have called me names such as a 'disgusting homosexual' and referring me as a 'fuck boy' and 'cho-mo'…Walters has threatened and harassed me for the people I associate with. She has also been causing conflict between me and inmates I have had problems with, and not protecting me from further harm or harassment by them."[33 at 9B].

The Step I response stated that "…evidence produced in this investigation did not substantiate any policy violations and this matter is considered closed/denied."  JD 8 appealed to step II, stating "actions made by staff show a

clear pattern of retaliation for a pending lawsuit I'm involved in on MDOC staff. The actions have increased since filing this lawsuit and is causing severe mental distress." This appeal was denied, stating "that prisoner is attempting to continue with his allegation(s) even after receiving the above grievance response that the matter is closed" and advised that "continuing to grieve this issue- that has already been closed, as stated above- will result in name being referred…for consideration of recommending it [sic] be placed on modified access status for continuing to abuse and misuse the grievance process" and step II appeal denied.

Defendants argue that this grievance was not exhausted because JD 8 did not appeal to step III, the grievance process was not complete before this action was filed, *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999), and it does not allege the conduct was done for a retaliatory purpose.

First, it seems clear that retaliation can be read into the grievance because the grievance states that JD 8 was harassed because of people he associates with and because of his sexual orientation. Since JD 8 alleges in the complaint that retaliation was in part due to his participation in a class action law suit, alleging that he was harassed because of people he associates with put the Defendants on notice of the retaliation claim at issue under a liberal pro se pleading standard.

Second, JD 8 failure to appeal to step III does not constitute a failure to exhaust. The step II response unequivocally stated that "continuing to grieve this issue- that has already been closed, as stated above- will result in name being referred…for consideration of recommending it [sic] be placed on modified access status for continuing to abuse and misuse the grievance process." This clearly amounts to official threat concerning completion of the administrative process. Under these circumstances, it is possible that administrative remedies were not "reasonably available" since he had been twice informed that the process was closed and was being improperly threatened with modified access if he continued to appeal the grievance. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 625 (6th Cir. 2011). Additionally, the threat of being placed on modified grievance access would surely be a stiff penalty since JD 8 was in fear of harassment and abuse and had been sexually assaulted by staff and fellow prisoners in his past. A person who fears harassment and abuse would take a threat to be placed on modified grievance status very seriously and thus the administrative remedies were not reasonably available to JD 8.

However, even if it is found that the grievance was exhausted by the denial of step II due to a lack of reasonably available administrative remedies, that denial happened on December 18, 2015 while the original complaint was filed on

November 2, 2015. Per the plain language of the PLRA, "[n]o action shall be brought…until such administrative remedies as are available are exhausted." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

Plaintiffs rely on *Curry v. Scott*, 249 F.3d 493 (6th Cir. 2001) to argue that because the grievance was exhausted before the final amended complaint was filed on February 18, 2016, then their claims relating to this grievance should not be dismissed. In *Curry*, the Court identified three factors in deciding that the case should not need to be dismissed despite the fact that the claims had not been exhausted before the filing of the complaint: (1) evidence showed that exhaustion had actually occurred; (2) this exhaustion happened before the filing of the amended complaint; and (3) the conduct being challenged predated the effective date of the new PLRA or occurred almost simultaneously.

Defendants argue that the use of this case to support non-dismissal of this claim in inapposite, and argue that this decision was factually specific given footnote 3 in the case which states that:

> We recognize that these circumstances are not likely to be repeated in this Court. It is only because the events at issue occurred so long ago (i.e., near passage of the Act and before this Court's adoption of processes for compliance with the Act) that the situation presents itself now. It is unlikely subsequent plaintiffs would find themselves in these unique circumstances

*Curry v. Scott*, 249 F.3d 493, fn. 3 (6th Cir. 2001). In a case that rejected an argument similar to Plaintiffs' here, the Court noted that the examples given by the Court in *Curry* are distinct, and declined to apply *Curry,* both because the claims being litigated occurred after the passage of the PLRA *and* there was no amended complaint filed. *Kittle v. Squier*, No. 2:11-CV-97, 2012 WL 5473142, at *2 (W.D. Mich. Nov. 9, 2012) (stating that "the Court [in *Curry*] found that 'exhaustion of remedies prior to the filing of an amended complaint…could constitute exhaustion 'prior to filing a suit in federal court' within the meaning of §1997e.'"). Therefore, there is an argument that these criteria were not factually specific and that there was a contemplation that exhausting before an amended complaint was filed could in fact suffice.

However, the allegations contained in this grievance were pled in the original complaint, therefore the argument that administrative remedies for this grievance were exhausted before being brought is not very strong. Defendants here did not have an opportunity to correct any improper action before the Court intervened. In fact, the complaint was filed an entire month before the step I response was even received; further negating Plaintiff's assertion that the administrative remedies were exhausted per *Curry*. *Jordan v. Caruso*, No. 2:08-

CV-261, 2010 WL 3220143, at *12 (W.D. Mich. Aug. 10, 2010), aff'd (Jan. 11, 2013). Therefore, summary judgment is granted on this grievance.

### ii.   IBC-1511-3121-03B [33-9C]- AGAINST DEFENDANT ARP

This grievance states that JD 8 told Lt Reed that "I fear for my safety. I stated that C/O Arp has threatened my safety in unit 2 and has made multiple retaliatory actions for grievances and litigation I file on him. I was denied any sort of protection…" Defendants state that this claim should be dismissed because JD 8 failed to appeal to step III, does not allege conduct pled by JD 8 against Officer Reed and does not complain specifically against Arp, and, if found to have been exhausted, was exhausted after the complaint was filed.

While the grievance was not specifically against Arp, the step I investigation focused in significant part on his actions and concluded "no evidence found that supports [JD 8's] claim officer Arp tried to have [JD 8] assaulted or that he threatened him in anyway." In fact, the merits response *only* mentions Arp by name and not Reed at all. Therefore, it is sufficient to find that Arp was placed on notice by the merits summary about his retaliatory actions alleged by JD 8. *Lee v. Willey*, 789 F.3d 673, 680-81 (6th Cir. 2015).

In terms of exhaustion, Step II appeal response stated 'grievance denied.' There is a question of fact of whether exhausted or not because of JD 8 alleges that

he was threatened that he would be placed on modified access in response to his appeal. However, the *Curry* issue of the grievance being exhausted before the complaint was filed is even more extreme for this grievance since the grievance itself was filed on November 17, 2015, *after* the original complaint was filed on November 2, 2015. Moreover, the original complaint contains allegations against Arp that mirror those in the grievance. Therefore, summary judgment is granted on this grievance.

### iii.   IBC-1509-2614-17z- AGAINST DEFENDANTS ARP, COBURN AND WALTERS

This grievance alleges that Defendant Walters harassed him for a letter he wrote concerning his sexual fantasies. [29-11 at 797]. It also mentions that other unnamed "unit staff, correctional officers and Inspector Wakefield" have subjected him to derogatory comments. *Id.* This grievance was denied at step III on January 19, 2016. [29-11 at 794].

Defendants argue that this grievance does not allege retaliatory conduct of any kind and does not correspond with the allegations pleaded against Walters in the amended complaint. This is correct.  There is no retaliatory motive to be found in the text of the grievance, and Defendant Walters was not on notice about the behavior that underlies JD 8's constitutional claim for retaliation with respect to this grievance.

Additionally, Plaintiff contends that this grievance is against all IBC Defendants, including Arp and Coburn. [33-4 at 1163]. However, Arp and Coburn are not named and the grievance is not specific enough to put them on notice, because the unnamed IBC Defendants are alleged to have harassed JD 8 since his arrival. Moreover, there is again the problem of no retaliatory motive to be found in the grievance. Therefore, the other IBC Defendants were not on notice concerning the allegations contained in this grievance. Additionally, this grievance again encounters the *Curry* problem of having been exhausted on January 19, 2016, well after the first complaint was filed.

Accordingly, summary judgment is granted as to this grievance with respect to Arp, Coburn and Walters.

### iv.  TWO GRIEVANCES AGAINST ERWAY

JD 8 further identifies two grievances against Erway and states that they were filed on or around August 9, 2015 and September 7, 2015. JD 8 complained that he "talked to Erway in 1 block about helping me with threats I've been receiving from [another prisoner]. Erway stated that he was going to ride me out soon. He did not take care of the immediate threats I was receiving from this inmate…it is unfair, cruel and unusual for me to lose my yards & chow making me

suffer to threats of 'getting my jaw broke' and punish me for [the other inmate's] behavior" [40 at Ex. 6, pg. 98].

JD 8 states that he never received a response from the facility and did not receive an identifier. He did attach kites filed in late August, filed with the grievance coordinator at IBC when he was transferred, requesting a grievance identifier for his grievance on retaliation and the response and was told to contact the coordinator at Oaks. When he received no response, he filed a grievance directly to step III in which he detailed his attempts and the failure of the grievance process. He was not provided with an identifier for the grievance and was rejected for filing directly to step III [33 at 9A].

Given the repeated attempts that JD 8 made to exhaust this grievance, there are facts to raise an inference that JD 8 exhausted since JD 8 made repeated "affirmative efforts to comply with the administrative procedure," demonstrating that the procedure was unavailable. *Brock v. Kenton Cty.*, KY, 93 F. App'x 793, 798 (6th Cir. 2004). However, the content of the grievance does not provide any notice of retaliation and therefore summary judgment is granted as to the grievances against Erway. Given that all of JD 8's claims have been dismissed for failure to exhaust, JD 8 is dismissed from the case.

### 9. JOHN DOE 9 [JD 9]

#### a. FACTUAL ALLEGATIONS IN THE COMPLAINT

Per the amended complaint, JD 9 alleges the following occurred after his participation in the lawsuit:

##### i. DEFENDANT JERANEK

JD 9 alleges that Defendant Jeranek did the following: (1) performed several harassing searches of JD 9's cell; (2) personally degraded JD 9 concerning his involvement in the case; (3) when Jeranek observed JD 9 in hallway, he would say over loudspeaker 'I need the rape victim to report to the bubble, this is a direct order.'

#### b. EVIDENCE PRESENTED OF GRIEVANCES AND EXHAUSTION

JD 9 did not file any grievances because, per his affidavit, the retaliatory actions of Jeranek caused other prisoners to begin to ask questions, call him a rat and a snitch, and threaten him. He feared that filing a grievance would have required him to further identify himself as a John Doe Plaintiff to MDOC staff which would further endanger his safety from both staff and prisoners given his past experiences of sexual assault.

Considering the threats he was facing, and his past experiences of rape and abuse at the hands of MDOC staff and prisoners, there is a question of fact of

whether a person of ordinary firmness would be deterred from proceeding with the grievance process and summary judgment is denied. *Himmelreich,* 766 F.3d at 577.

### 10. JOHN DOE 10

#### a. FACTUAL ALLEGATIONS IN THE COMPLAINT

After filing the lawsuit, JD 10 alleges the following:

#### i. COTTON (JCF) DEFENDANT WARD

JD 10 alleges that he began to receive comments and harassment from staff, including Defendant Ward, concerning attorney communications. As a result of these comments, and the comments he received from other prisoners, JD 10 believed he was in danger for reporting abuse. Ward is alleged to have harassed JD 10 about litigation, and informing him that he wouldn't be assaulted if he wasn't gay, that he should be ashamed, and why are you still alive.

#### ii. RMI DEFENDANT SCHOOLEY

JD 10 alleges that Defendant Schooley was aware that he was being called a snitch and harassed by other prisoners, but refused to intervene.

#### iii. IBC DEFENDANTS ARP, COBURN AND WALTERS

JD 10 alleges that Defendant Arp, along with Defendant Coburn, threatened him with misconducts, loss of programs, and more time in prison after JD 10 filed grievances for retaliation and harassment. Additionally, JD 10 alleges that Arp,

Coburn and Walters verbally harassed him, punished him, refused to call him out for his detail as a porter, required arbitrary pack ups, searched his cell excessively, and told other officers to destroy items in the cell.

### iv.  IBC DEFENDANT COBURN

JD 10 alleges that Coburn did the following: (1) searched JD 10's cell twice a day during the same shift, and his property was strewn about; (2) singled out JD 10 for punishment saying it was because "you're suing that state and you're gay;" and (3) taunted JD 10 over the intercom, mocked kissing him, threatened him, and stated 'now go tell your lawyer.'

### v.  IBC DEFENDANT MCKEE

JD 10 also alleges that Defendant Warden McKee "engaged in unlawful retaliation against [him]." [22 at ¶43]. However, once again, there are no specific factual allegations pled against Warden McKee in the amended complaint, and there is no evidentiary support for this claim and summary judgment is granted as to this claim for lack of any notice.

### b.  EVIDENCE PRESENTED OF GRIEVANCES AND EXHAUSTION

#### i.  JCF-14-12-3044-17C [40-08 AT 6-7] AND PREA INVESTIGATION DOC [33 AT 11-A]- AGAINST DEFENDANT WARD

This grievance alleged that Ward stood in front of his cell and said that 'if you weren't gay these assaults wouldn't be taking place and you should be ashamed of yourself' and 'what is your purpose for living?' JD 10 filed a step I grievance which was subsequently suspended pending a PREA investigation which was completed on 1/14/15. This investigation concluded that there was insufficient evidence to support a finding that Ward sexually harassed JD 10 [33 at 11-A].

Defendant argues that this grievance was not exhausted because JD 10 did not appeal to steps II and III. However, the policy directives concerning grievances that are investigated by internal affairs do not provide notice to a prisoner that their grievance must be appealed through all three steps, even after they accept jurisdiction and investigate the charge. *See* 29-3 at ¶Q; *see also Langton v. Combalecer*, No. 06-11987, 2008 WL 896062, at *3 (E.D. Mich. Mar. 31, 2008) (holding "Defendants' argument that Plaintiff did not utilize the internal MDOC grievance procedures is disingenuous, as sexual misconduct claims are transferred out of the grievance process to Internal Affairs. The Internal Affairs investigation satisfies the exhaustion requirement."). Therefore, this grievance was successfully exhausted when the PREA submitted their report on the investigation on January 14, 2015.

Based on generous reading of *pro se* complaints, and the details of the complaint, it can be read to allege retaliation given that JD 10's grievance states that Ward referenced his assault and him being gay as the reasons for his alleged actions. Accordingly, the Court denies summary judgment on this claim.

### ii.  IBC-15-04-1060-17C [33, 11-B]- against Defendant Coburn and McKee

In his grievance, JD 10 alleged that Coburn sexually harassed the prisoner by stating "because you are suing the state and because you are gay and I don't like that." At conclusion of investigation, it was determined that there was no evidence to support prisoner allegations, and JD 10 was given a misconduct because of the nature of the allegation. When JD 10 appealed at step II, he was informed that the investigation is completed, and the matter and the grievance was considered closed. JD 10 states that he asked for a step III, and was informed that it was not permitted. Defendants argue that he should have used the step II form, and done it on his own after being denied one.

Based on the evidence presented, it is obvious that, despite the attempts made by JD 10 to pursue this grievance, there is a question of fact whether there were available administrative remedies, and thus if this grievance was exhausted on June 24, 2015 when he received the step II response. *Brock v. Kenton Cty., KY*,

93 F. App'x 793, 798 (6th Cir. 2004). Therefore, summary judgment is not granted on this claim as to Coburn.

Once again McKee is named in this claim, but there is no evidence that he was put on notice concerning this claim and accordingly summary judgment on this grievance as to McKee is granted.

### iii.  IBC-1504-1069-17C- AGAINST WALTERS AND MCKEE [33-11B]

This grievance was filed against Walters and alleges sexual harassment in retaliation for the grievance JD 10 made against Coburn (see grievance discussed above). JD 10 alleges that he was moved to different cell right before dinner, and when asked why he was being moved, Walters said "because your boyfriend's lock's across the hall and I don't give homosexuals what they want."

JD 10 states that he was issued a misconduct for interference with administrative rules on May 20, 2015, and never received a response. Defendants state that they sent him a response on May 20, 2015 telling him that the investigation was complete and denying the grievance. They assert this claim should be dismissed because JD 10 did not appeal to steps II or III.

Summary judgment is denied as to this grievance against Defendant Walters. There is a question of fact regarding whether or not JD 10 ever received a response. Considering the facts in the light most favorable to JD 10, he was issued

a misconduct when he inquired about this claim and, according to him, never received a response. Therefore there were no available administrative remedies available, and this grievance was exhausted, either upon receiving the misconduct in May or in August after 120 days passed with no response.

Again McKee is named in relation to this claim but there is no evidence that he was put on notice and summary judgment on this grievance as to McKee is granted.

### iv.  GRIEVANCE AGAINST SCHOOLEY AND ARP

In his response, Plaintiff does not address the allegations against Schooley and Arp and there is no evidence presented of either kites presented regarding a grievance submitted against Schooley and/or Arp, and no evidence of the grievance itself or affidavit evidence testifying to the filing of a grievance against Schooley and Arp. There was no notice given to Schooley and Arp about these allegations and Plaintiff has failed to show that any efforts were made to grieve against Schooley and Arp. Therefore, with respect to JD 10's claim against Schooley and Arp, summary judgment is granted.

### 11. JOHN DOE 12  [JD 12]

#### a.  FACTUAL ALLEGATIONS IN THE COMPLAINT

#### i.  AMF DEFENDANT BEESLEY

JD 12 alleges that Beesley did the following after he met with counsel to discuss joining the lawsuit: (1) Performed destructive searches and made threatening comments to JD 12 and other youth for bringing the lawsuit; (2) During his attorney visit, Beesley encouraged other staff to flip JD 12's cell, causing shampoo to be poured over family pictures and generally leaving the cell in disarray; (3) Threatened JD 12 if he continued with litigation; and (4) After JD 12 filed grievance, Defendant Beesley physically assaulted him, warning him to keep his name, and any other correctional officer's names, out of the litigation.

### ii.  AMF DEFENDANTS DESCHAINE AND HEYRMAN

After joining the litigation, JD 12 alleges that Deschaine and Heyrman told other prisoners and staff that he claimed he had been raped before, and mocked and taunted him with more abuse. Additionally, JD 12 claims that he received destructive cell searches, loss of legal property, denial of privileges, and threats from Deschaine and Heyrman about the litigation.

### iii.  AMF DEFENDANT JACOBSON

After joining the litigation, JD 12 alleges that Jacobson physically assaulted JD 12 and ordered him to strip, forcing him to expose himself while using the bathroom to other prisoners during a shakedown. In addition, JD 12 alleges that his

cell was destroyed and that Jacobson told him to stop grieving D Beesley, stating "see what your lawyer is getting you into?"

### iv.   ICF DEFENDANT CONKLIN

After joining the litigation, JD 12 alleges that he was gassed by Conklin and placed in hard restraints when he was scheduled for an attorney visit. JD 12 also alleges that Conklin taunted him about his status as a JD, and warned him about being involved in litigation.

### v.   ICF DEFENDANTS MARTENS AND STAMBAUGH

After joining the litigation, JD 12 alleges that Martens and Stambaugh told him they knew he was a JD and a 'butt boy,' and made threatening statements regarding his filing a lawsuit against MDOC and getting staff in trouble.

### b.  EVIDENCE PRESENTED OF GRIEVANCES AND EXHAUSTION

#### i.  AMF-1506-1453-17B [33 AT 12-F]- AGAINST BEASLEY AND DESCHAINE

JD 12 alleges retaliatory conduct on the part of Beasley in response to meeting with his lawyer and participating in the lawsuit when they issued him a misconduct after he had not done anything wrong. It is admitted that this grievance was properly exhausted, but Defendants contend that it does not involve allegations in the complaint. However, the acts grieved can clearly be seen as threats and harassment in response to participating in the litigation as they were in

response to meetings with his attorney, which was alleged in the complaint.

Therefore, summary judgment is denied on this claim as to Beesley. Deschaine

was not interviewed as a suspect in this allegation and therefore was not on notice

for this claim and summary judgment is granted as to him on this claim.

### ii.  AMF-15-05-1225-17A [33 AT 12-A]- AGAINST DEFENDANT BEESLEY AND HEYRMAN

JD 12 alleged that Beesley, and co-workers Massey and others, arbitrarily

denied him out-of-cell exercise in retaliation for filing grievances. Defendants

admit this claim was exhausted to step III, but assert doesn't seem to correspond to

any allegations in complaint. However, the complaint references loss of privileges,

which this covers. Therefore, summary judgment is denied on this grievance with

respect to Beesley.

Plaintiff also insists that this grievance adequately exhausts as to Defendant

Heyrman, despite spelling his name wrong. However, officer "Herman" is only

identified as one of the officers with whom JD 12 attempted to resolve the problem

with, and does not put Heyrman on notice of the allegations in the complaint.

Therefore, this grievance is not exhausted as to claims against Heyrman and

summary judgment is granted as to Heyrman.

### iii.  AMF-1506-1301-17B [33 AT 12-D]- AGAINST DEFENDANT BEESLEY AND OTHER AMF DEFENDANTS

The grievance of JD 12 alleges retaliation for consulting with his attorney in the form of "flipping" his cell during an attorney visit. Defendants admit that JD 12 exhausted as to Beesley in this claim. Plaintiff asserts that it adequately covers all Defendants at AMF because the grievance refers to "staff in unit 2," along with Beesley, also "co-workers" or "others," which includes Defendants Deschaine, Heyrman and Jacobson. Defendants argue that the grievance response addressed only the merits as to Beesley and other named people.

In the step I response, it is mentioned that unit 2 staff were interviewed, and they denied leaving JD 12's cell in disarray. Therefore the merits of allegations addressed the merits as to other Defendants at AMF, and any procedural default argument is waived. This grievance exhausts the claims as to all AMF Defendants related to this issue and summary judgment is denied. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).

### iv.   AMF-1506-1399-17B [33 AT 12-C]- AGAINST BEESLEY AND ALL OTHER AMF DEFENDANTS

The grievance alleges that Beesley verbally threatened and harassed JD 12 in retaliation for seeing attorney. JD 12 alleges that "co-workers" were invoked and that this exhausts as to all AMF Defendants. However, this argument is unpersuasive, as the grievance does not allege all co-workers, and the merits investigation only looked at Beesley and CO Coronado who is not a Defendant in

this case. The investigation specifically involved only "named officers."
Defendants also challenge that the grievance doesn't involve allegations in
complaint. However, "verbal threats" are surely threats and thus the grievance
exhausted the claim as to Beesley and summary judgment is denied as to Beesley.
The other AMF Defendants were not placed on notice with this grievance, and
therefore only claims relating to Beesley are exhausted and summary judgment is
granted in regards to this grievance to all other AMF Defendants.

### v.   AMF-1506-1303-28A [33 AT 12-E]- AGAINST DEFENDANT BEESLEY

JD 12 alleges that Beesley engaged in retaliation by taking away yard
privileges. JD 12 states during attempts to resolve the problem that Beesley stated
"what he can't do his co-workers will." This claim was rejected as a duplicate at
step I, but upon step II, investigation of the merits were addressed. This grievance
was exhausted through step III.  Defendants assert that the grievance doesn't
involve allegations in complaint. However, the grievance alleges "verbal threats"
which are alleged in the complaint and thus the grievance is exhausted as to
Beesley and summary judgment as to this grievance is denied.

### vi.   GRIEVANCE AGAINST DEFENDANTS STAMBAUGH, CONKLIN AND MARTEN

JD 12 was placed on modified grievance access until September 21, 2015 on June 23, 2015. It was ultimately extended until March 31, 2016. JD 12 asserts that he attempted to submit grievances for retaliatory harassment, denial of due process rights, and retaliatory denial of showers by Stambaugh from August 15 through September 15, 2015, and retaliatory harassment against Stambaugh on October 4, 2015. JD 12 attempted to file grievances against Conklin for retaliatory harassment and excessive use of force on September 28, 2015. Finally JD 12 attempted to file grievance against Marten for retaliatory harassment and denial of shower on October 4, 2015.

In support of the allegations, JD 12 has submitted his written requests to file grievances [33 at Ex. 12-J]. He alleges the grievance coordinator either received no response or that the grievance was denied as untimely. Defendants argue that these requests were all denied as "untimely" per their evidence. [29-14, 1042-1052]. There is no evidence presented by Plaintiff that these requests were not untimely, therefore, summary judgment is granted as to the grievances against Defendants Stambaugh, Conklin and Marten.

## CONCLUSION

In conclusion, several of the claims should be subject to summary judgment for a failure to adequately exhaust while others have been fully and properly

exhausted and summary judgment should be denied. Additionally, there are several claims where summary judgment is denied but a question of fact remains. These claims will be scheduled for a jury trial to resolve the questions of fact.

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [29] is **DENIED in part** and **GRANTED in part, as follows:**

- JOHN DOE 1

    o Summary judgment is **GRANTED** on claims against Defendants Coburn and McKee.

    o Summary judgment on claim is **DENIED** against Defendants Arp and Coburn as related to the evidence presented in Plaintiff's affidavit because a question of fact exists.

- JOHN DOE 2

    o Summary judgment is **GRANTED** on all of John Doe 2's claims against Defendants Marten, McLeod, Sherwood, Stambaugh, Rogers, Hoogewind and Schooley.

- JOHN DOE 3

    o For grievance IBC-1410-3045-17C, summary judgment is **GRANTED** on claims against Hall and McKee.

    o For grievance IBC-1505-1274-17B, summary judgment is **GRANTED** as to McKee and **DENIED** as to Hammer and Stump. No question of fact remains on exhaustion.

    o For grievance IBC-1505-1312-17z, summary judgment is **DENIED** as to Stump because a question of fact exists.

- o For grievance IBC-1510-2925-28e, summary judgment is **DENIED** as to claims against Pennell, Hall, Hammer and Stump. No question of fact remains on exhaustion.

- **JOHN DOE 4**

  - o Summary judgment is **GRANTED** for claims against McKee.

  - o Summary judgment is **DENIED** as to the claims against Gollnasst because questions of fact remain.

- **JOHN DOE 5**

  - o Summary judgment on is **DENIED** on all of Plaintiff's claims against Defendants Anderson, Ross, Coburn, McKee and Arp because a question of fact exists.

- **JOHN DOE 8**

  - o Summary judgment is **GRANTED** on all of John Doe 8's claims against Defendants Erway, Arp, Coburn, Walters and McKee.

- **JOHN DOE 9**

  - o Summary judgment on all of Plaintiff's claims against Defendant Jeranek are **DENIED** because a question of fact exists.

- **JOHN DOE 10**

  - o For grievance JCF-1412-3044-17C, summary judgment is **DENIED** against Plaintiff's claims against Ward. No questions of fact remain as to exhaustion.

  - o For grievance IBC-1504-1069-17C, summary judgment is **DENIED** as to Coburn because a question of fact exists and **GRANTED** as to McKee.

- o For grievance IBC-1504-1069-17C, summary judgment is **GRANTED** as to McKee and **DENIED** as to Walters because a question of fact remains.

- o Summary judgment is **GRANTED** on all of John Doe 2's claims against Defendants Schooley and Arp.

- **JOHN DOE 12**

  - o For grievance AMF-1506-1453-17B as against Defendant Beesley, summary judgment is **DENIED.** As to claims against Deschaine, summary judgment is **GRANTED**. No question of fact remains.

  - o For grievance AMF-15-05-1225-17A 17B against Defendants Beesley and Heyrman, summary judgment is **GRANTED** as to claims against Heyrman and **DENIED** as to Defendant Beesley. There are no questions of fact remaining.

  - o For grievance AMF-1506-1301-17B against Defendants Beesley, Deschaine, Heyrman and Jacobson, summary judgment is **DENIED** and no questions of fact remain.

  - o For grievance AMF-1506-1399-17B, summary judgment is **DENIED** as to Defendant Beesley and no questions of fact remain. As to claims against all other AMP Defendants, summary judgment is **GRANTED**.

  - o For grievance AMF-1506-1303-28A as against Defendant Beesley, summary judgment is **DENIED**. No question of fact remain.

  - o For claims relating to grievance against Defendants Stambaugh, Conklin and Martens, summary judgment is **GRANTED**.

**SO ORDERED**.

s/Arthur Tarnow

Arthur J. Tarnow
Dated:  March 31, 2017             Senior United States District Judge

**GLOSSARY OF INSTITUTIONS**

Bellamy Creek (IBC)

Michigan Reformatory (RMI)

Ionia correctional facility (ICF)

St. Louis correctional facility (SLF)

Macomb (MRF)

Oaks (ECF)

Cotton (JCF)