# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, JOHN DOE 8, JOHN DOE 9, JOHN DOE 10, and JOHN DOE 12,

      Plaintiffs,

v.

DUSTIN ANDERSON, et al.,

      Defendants.
_____/

CIVIL ACTION NO. 15-cv-13852

DISTRICT JUDGE ARTHUR J. TARNOW

MAGISTRATE JUDGE MONA K. MAJZOUB

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO ENFORCE STIPULATION TO MODIFY DEPOSITION PROCEDURE [71] AND DENYING PLAINTIFFS' MOTION TO MODIFY STIPULATED PROTECTIVE ORDER [72]

Plaintiffs John Does 1-5, 8-10, and 12, current and former prisoners of the Michigan Department of Corrections (MDOC), initiated this prisoner civil rights action in November 2015, against Defendants, Corrections Officers Dustin Anderson, Scott Arp, Noah Beesley, Adam Coburn, Conklin, Deschaine, Jason Erway, Charles Gollnast, Michael Hall, Hammer, Francis Heyrman, Tami Hoogewind, Erik Jacobson, Edward Juranek, Joseph Martens, McLeod, Cody Pennell, Aimee Rogers, Ross, Sherwood, Ronald Stambaugh, Gretchen Walters, Scott Schooley, Gary Stump, and Matthew Ward, Deputy Director Kenneth McKee, Director Heidi Washington, and the MDOC pursuant to 42 U.S.C. § 1983, alleging violations of their First Amendment rights.[1] (Docket nos. 1, 4, 22.) More specifically, Plaintiffs, who were housed in adult prisons while under the age of eighteen, allege that Defendants retaliated against them for exercising

---
[1] Several parties have since been dismissed from this matter. (*See* docket nos. 21, 84, 121.)

their First and Sixth Amendment rights to sue the MDOC and its employees for sexual abuse that they endured during their incarceration. (*See* docket no. 22.)

This matter is currently before the Court on Plaintiffs' Motion to Enforce Stipulation to Modify Deposition Procedure (docket no. 71) and Plaintiffs' Motion to Modify Stipulated Protective Order Regarding Discovery Documents (docket no. 72). Defendants responded to Plaintiffs' Motions (docket nos. 77, 80), and Plaintiffs replied to Defendants' Response to the Motion to Enforce Stipulation (docket no. 78). The Motions have been referred to the undersigned for consideration. (Docket no. 74.) The Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f). The Court did, however, hold a conference call with the parties on September 18, 2017 at 1:30 p.m. to clarify the extent of the relief sought by Plaintiffs through their Motion to Enforce Stipulation. The Court is now ready to rule pursuant to 28 U.S.C. § 636(b)(1)(A).

**I.       Motion to Enforce Stipulation to Modify Deposition Procedure [71]**

In the instant Motion, Plaintiffs assert that the parties stipulated under Federal Rule of Civil Procedure 29 to modify the deposition procedure in this matter to require that the court reporter substitute Plaintiffs' John Doe designations for their actual names (Plaintiffs' actual names were used on the record during cross examination) when transcribing the testimony. (Docket no. 71 at 2.) Under Rule 29, the parties may stipulate that "a deposition may be taken before any person, at any time or place, on any notice, and in the manner specified—in which event it may be used in the same way as any other deposition." Fed. R. Civ. P. 29(a). According to Plaintiffs, the parties entered into a verbal Rule 29 stipulation on the record at four depositions taken in this matter on October 14, 2016. (Docket no. 71 at 11-12.) For example, at Defendant

Stambaugh's deposition, the following exchange occurred between Plaintiffs' counsel, Sarah Prescott, and Defendants' counsel, Assistant Attorney General (AAG) Michael R. Dean:

> MS. PRESCOTT: Okay. Okay. We have a set of codes we're going to pass to the court reporter to code the names of the inmates that are talked about, and we will handle that as we have with prior depositions in this set of cases between legal counsel. Does that make sense, and we'll be changing out the names for the John Doe names. Is that agreeable?
>
> MR. DEAN: Yeah, that's fine.

(*Id*. at 11; docket no. 71-2 at 4.) A similar exchange took place on the record between Ms. Prescott, Mr. Dean, and AAG Adam L.S. Fracassi at Defendant Sherwood's deposition:

> MS. PRESCOTT: We also just spoke, prior to coming back on the record about coding the transcript with the John Doe numbers in the case consistent with prior practice, even though today, in fact, we've used particular inmates' names, I'll supply the court reporter with their John Doe designations, and we've agreed that we'll do whatever coding has been consistent with prior practice. Does that make sense?
>
> MR. DEAN: That makes sense.
>
> MS. PRESCOTT: That's good with you guys?
>
> MR. FRACASSI: Yes.

(*Id*. at 11-12; docket no. 71-3 at 4.) The same procedure was followed at Defendant Walters' and Defendant Hall's depositions, without objection from defense counsel. (*Id*. at 12; docket no. 71-4 at 4; docket no. 71-5 at 4.) Then, at the depositions of two defendants on October 21, 2016, Defendants' counsel, AAG Mark E. Donnelly, objected to the court reporter's substitution of Plaintiffs' names for their John Doe designations in the transcript. (Docket no. 77 at 6.) In an ensuing conversation, Plaintiffs' counsel allegedly advised Mr. Donnelly that there was an agreement to follow that procedure with regard to depositions taken in the state-court case, and Mr. Donnelly countered that there was no such agreement. (*Id*.) Mr. Donnelly then instructed

3

the court reporter not to alter the transcript of the deposition testimony taken that day. (*Id*.) Defendants continue to object to this procedure.

Plaintiffs assert that the stipulated procedure is necessary "to prevent the revelation of Plaintiffs' identities through disclosure or distribution of the deposition transcripts, thereby minimizing Plaintiffs' risk of further retaliation." (Docket no. 71 at 2.) Plaintiffs therefore move the Court to enforce the parties' Rule 29 stipulation requiring the court reporter to substitute Plaintiffs' John Doe designations for their actual names in the deposition transcripts. (*Id*. at 15.) In the alternative, Plaintiffs move the Court to enter a Rule 26(c) protective order either (1) requiring the parties to follow the stated deposition procedure; or (2) "requiring, for all purposes other than trial, the redaction of Plaintiffs' names (and substitution with their John Doe designations) in any transcript disseminated to anyone, except those provided to the parties or filed under seal with the Court." (*Id*.; docket no. 78 at 4.)

In their Response to Plaintiffs' Motion, Defendants deny that they entered into a Rule 29 stipulation with Plaintiffs to modify the deposition procedure to require the court reporter to substitute Plaintiffs' John Doe designations for their actual names in the deposition transcripts. (Docket no. 77 at 4.) Defendants assert that to the extent Plaintiffs obtained an agreement from defense counsel to follow that procedure in certain depositions, it was due to a misunderstanding or misrepresentation about what was agreed to in the state-court case. (*Id*. at 4-5.) Defendants argue that there is no legal authority to permit official deposition transcripts to be altered or modified. (*Id.* at 8.) Defendants also argue that it is a court reporter's duty to maintain a complete, accurate, and verbatim record of a proceeding, and the record should not be altered, even upon the order of a judge. (*Id*. at 8-9 (citing Mich. State Court Admin. Office, Manual for Court Reporters and Recorders, Sec. 1, Ch. 1, p. 1, and Sec. 5, Ch. 1, p. 1, *available at*

http://courts.mi.gov/administration/scao/resources/documents/publications/manuals/crr/crr_mnl.pdf).) Defendants further argue that modifying the official deposition transcripts in accordance with the procedure at issue will create confusion and may lead to the possibility that a true, accurate record will be unavailable. (*Id*. at 9.) Defendants assert that the proper solution is not to alter the sworn deposition testimony taken in this matter by substituting Plaintiffs' John Doe designations for their names in the official transcripts, but to enter a protective order regarding the dissemination of the transcripts, if necessary. (*Id*. at 4, 7, 9-10.)

The Court has considered the parties' respective arguments, and finds that Defendants are correct – it is improper for a court reporter to alter or modify the sworn testimony of a deponent in transcribing an official deposition transcript. The Court also finds that Plaintiffs' concerns regarding any further revelation of their identities are well-founded and that a heightened level of protection of Plaintiffs' identities is therefore warranted with regard to depositions taken in this matter. Accordingly, with regard to any depositions taken in this matter after the entry of this Opinion and Order, the Court will order that Plaintiffs be referred to on the record by their respective John Doe designations only; references to Plaintiffs by their actual names on the record will no longer be permitted. With regard to the transcripts of depositions that have already been taken but have not yet been transcribed pending the Court's ruling on the instant Motion, the Court will order that the transcripts be transcribed to reflect the verbatim record of the deposition. Should these transcripts, or any already-existing transcripts of depositions taken in this matter, reflect the actual names of the Plaintiffs, the Court will order that Plaintiffs' actual names be redacted from the transcripts and substituted with their John Doe designations prior to being disseminated to anyone, except those transcripts provided to the parties or filed under seal with the Court.

**II.     Motion to Modify Stipulated Protective Order Regarding Discovery Documents [72]**

The court entered a Stipulated Protective Order Regarding Discovery Documents on October 18, 2016. (Docket no. 61.) Through the instant Motion, Plaintiffs seek relief from the following provision in the Order:

> As to the named Plaintiffs, copies of records shall not be provided to them without Defendants' permission granted pursuant to this Order. As to any other person currently or formerly under the jurisdiction of the MDOC, copies of the records shall not be provided to or discussed with them without Defendants' permission granted pursuant to this [O]rder. Plaintiffs do not agree to this provision but solely for purposes of expediting discovery, have agreed to abide by this Paragraph and shall abide by it until the matter can be addressed by the Court on Plaintiffs' motion.

(Docket no. 61 ¶ 7.) The term "records" includes: (1) personnel files of current or former state employees; (2) disciplinary records of current or former state employees; (3) internal business or financial files not otherwise subject to FOIA disclosure, and any investigatory materials such as reports and witness interview statements; (4) medical and mental health records relating to any party; and (5) financial, tax, and other similar and confidential and personal information relating to Plaintiffs. (*Id*. at 2-3.) Defendants assert that only the first four categories of records, which relate to Defendants and other MDOC employees, are relevant here; they claim that the fifth category is irrelevant because it relates to Plaintiffs' records. (Docket no. 80 at 8 n.4.) Defendants also explain that "other persons currently or formerly under the jurisdiction of the MDOC" refers to current or former prisoners or parolees of the MDOC who are not parties to this litigation. (*Id*. at 5.)

It is within the sound discretion of the district court to modify existing protective orders. *See In re Upjohn Co. Antibiotic Cleocin Products, Etc.*, 664 F.2d 114, 118 (6th Cir. 1981); *see*

6

*also Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 161 (6th Cir. 1987). Much of the case law addressing modification of a protective order arises in the context of a party seeking to lift or modify a protective order to expand the use of confidential information, as is the case here. While "courts are split as to whether the burden of showing good cause for continued protection lies with the protected party or with the party seeking modification," "a review of the case law within the Sixth Circuit relative to this issue reveals that the burden is upon the party who seeks a modification of a protective order, to show sufficient cause to justify the request." *Omega Homes, Inc. v. Citicorp Acceptance Co.*, 656 F. Supp. 393, 403 (W.D. Va. 1987); *In re Air Crash Disaster at Detroit Metro. Airport on Aug. 16, 1987*, 130 F.R.D. 634, 638 (E.D. Mich. 1989). Particularly, the Sixth Circuit's decision in *Meyer Goldberg, supra*, is instructive:

> Given that proceedings should normally take place in public, imposing a good cause requirement on the party seeking modification of a protective order is unwarranted. If access to protected fruits can be granted without harm to legitimate secrecy interests, or if no such interests exist, continued judicial protection cannot be justified. In that case, access should be granted even if the need for the protected materials is minimal. When that is not the case, the court should require the party seeking modification to show why the secrecy interests deserve less protection than they did when the order was granted. Even then, however, the movant should not be saddled with a burden more onerous than explaining why his need for the materials outweighs existing privacy concerns.

823 F.2d at 163 (citation omitted).

Plaintiffs argue that the Protective Order should be modified to omit the provision at issue because it "is grossly overbroad and inclusive of documents for which the MDOC cannot articulate any justification requiring such strict protective measures." (Docket no. 72 at 11.) Plaintiffs also argue that the provision hinders their ability to effectively conduct discovery, question witnesses, and develop the evidence necessary to prosecute their case. (*Id*. at 12.) Plaintiffs further argue that the provision's requirement that Plaintiffs obtain Defendants'

permission to share the confidential records gives Defendants undue influence over Plaintiffs' capacity to develop and prosecute their case, especially where Defendants' decisions regarding whether to grant such permission to Plaintiffs will be colored by their legal self-interests. (*Id.*)

Defendants respond that the Protective Order should not be modified because it is "limited in nature and only applies to certain records believed to be of marginal relevance to the disputed issues in this case but for which there is a high safety and/or security concern if released without restriction." (Docket no. 80 at 6.) Defendants also point out that the Protective Order includes a waiver provision, which allows the parties to deviate from the provision at issue in the event that a confidential record is relevant and warrants some type of disclosure. (*Id.* at 6-7.) Defendants also argue that Plaintiffs' Motion should be denied because it "fails to identify any specific documents provided under the protective order that [Plaintiffs] wish to disclose to their clients or 3rd parties," and it "simply seeks to undo the protective order in a wholesale manner with no regard for the potential damage that unrestricted disclosure could cause." (*Id.* at 7.)

Defendants then provide several examples of situations in which the disclosure of the protected records could place the security of the prisons and/or the safety of MDOC employees and their families at risk. (Docket no. 80 at 9-18.) For example, with regard to the personnel files of current and former state employees, Defendants explain that they contain information that is highly personal in nature, such as personally-identifiable information, home addresses, telephone numbers, information about dependents and beneficiaries (including spouses and children), bank account information, emergency contact information, and conflict of interest disclosures, the sensitivity of which has been recognized by the State Legislature and has therefore been exempted from disclosure under Michigan's Freedom of Information Act. (*Id.* at 9-10.) Defendants argue that dissemination of the information contained within an employee's

personnel record "could result in the potential for threats, manipulation, extortion, coercion, or the perpetration of a fraud against" that employee or his or her family members. (*Id*. at 10.) With regard to an employee's disciplinary records, Defendants explain that they could contain information not within the general knowledge of the prison population, such as specific prison policies or protocols violated by an employee, the disclosure of which could undermine the security of the prisons. (*Id*. at 12.) Defendants assert that an employee's disciplinary records could also contain information about the employee that could make him vulnerable to prisoner threats or manipulation, e.g. discipline for the use of a controlled substance. (*Id*.) And with respect to investigatory materials, Defendants state that they usually include personal and/or privileged information about employees or third-party prisoners; they may include information regarding investigatory techniques used by corrections officers; and they may include relevant video footage from prison security cameras, which may reveal the location of hidden security cameras if disseminated to Plaintiffs or other non-party current or former prisoners. (*Id*. at 16-17.)

In light of these situational examples of security and safety risks, the Court finds Plaintiffs' argument that Defendants cannot articulate any justification for the protections outlined in the provision at issue to be unavailing. The Court also finds the scope of the records limited by the Protective Order to be appropriate for purposes of this litigation. Plaintiffs' hypothetical assertions of difficulty in effectively conducting discovery and developing evidence as a result of this provision are insufficient to justify modifying the Protective Order, particularly where there is a waiver provision in place, and there is no indication that Defendants have unjustly withheld permission to share relevant, confidential records under the provision. Accordingly, the Court will deny Plaintiffs' Motion to Modify the Stipulated Protective Order.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Enforce Stipulation to Modify Deposition Procedure [71] is **GRANTED IN PART** and **DENIED IN PART** as follows:

a. With regard to any depositions taken after the entry of this Opinion and Order, it is ordered that Plaintiffs be referred to on the record by their respective John Doe designations ONLY; references to Plaintiffs by their actual names on the record is not permitted;

b. With regard to the transcripts of depositions that have already been taken but have not yet been transcribed pending the Court's ruling on the instant Motion, it is ordered that the transcripts be transcribed to reflect the verbatim record of the deposition;

c. If the transcripts described in section b above or any already-existing deposition transcripts reflect Plaintiffs' actual names, it is ordered that Plaintiffs' actual names be redacted from the transcripts and substituted with their John Doe designations prior to being disseminated to anyone, except those transcripts provided to the parties or filed under seal with the Court; and

d. This Order applies only to those depositions taken for purposes of this litigation.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Modify Stipulated Protective Order Regarding Discovery Documents [72] is **DENIED**.

### NOTICE TO THE PARTIES

Pursuant to Federal Rule of Civil Procedure 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).

Dated: September 20, 2017     s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Order was served upon counsel of record on this date.

Dated: September 20, 2017     s/ Lisa C. Bartlett
                              Case Manager