JOHN DOE 1, JOHN DOE 2, JOHN
DOE 3, JOHN DOE 4, JOHN DOE 5,
JOHN DOE 8, JOHN DOE 9, JOHN
DOE 10, and JOHN DOE 12,

          Plaintiffs,                CIVIL ACTION NO. 15-cv-13852

      v.                      DISTRICT JUDGE ARTHUR J. TARNOW

DUSTIN ANDERSON *et al.*,        MAGISTRATE JUDGE MONA K. MAJZOUB

          Defendants.
_____/

### OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL [82], GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL [88], GRANTING DEFENDANTS' MOTION TO COMPEL [101], GRANTING PLAINTIFFS' MOTION TO COMPEL [102], AND DENYING PLAINTIFFS' MOTION TO ENFORCE SUBPOENA [103]

Plaintiffs John Does 1-5, 8-10, and 12, current and former prisoners of the Michigan Department of Corrections (MDOC), initiated this prisoner civil rights action in November 2015, against Defendants, Corrections Officers Dustin Anderson, Scott Arp, Noah Beesley, Adam Coburn, Conklin, Deschaine, Jason Erway, Charles Gollnast, Michael Hall, Hammer, Francis Heyrman, Tami Hoogewind, Erik Jacobson, Edward Juranek, Joseph Martens, McLeod, Cody Pennell, Aimee Rogers, Ross, Sherwood, Ronald Stambaugh, Gretchen Walters, Scott Schooley, Gary Stump, and Matthew Ward, Deputy Director Kenneth McKee, Director Heidi Washington, and the MDOC pursuant to 42 U.S.C. § 1983, alleging violations of their First Amendment rights.[1]  (Docket nos. 1, 4, 22.)  More specifically, Plaintiffs, who were housed in adult prisons

---

[1] Several parties have since been dismissed, and some of those dismissed have since been reinstated in this matter. (*See* docket nos. 21, 84, 121, 130, 131.)

while under the age of eighteen, allege that Defendants retaliated against them for exercising their First and Sixth Amendment rights to sue the MDOC and its employees for sexual abuse that they endured during their incarceration. (*See* docket no. 22.)

This matter is currently before the Court on five Motions: (1) Plaintiffs' Motion to Compel Responses to Plaintiffs' First Request for Production of Documents and Deposition Testimony and Motion for Protective Order (docket no. 82); (2) Plaintiffs' Motion to Compel Complete Responses to Plaintiffs' Interrogatories Regarding Trial Witnesses (docket no. 88); (3) Defendants' Motion to Compel Certain Depositions and Preserve the Right to Take Others After Discovery Cut-Off as Needed (docket no. 101); (4) Plaintiffs' Motion to Compel Complete Responses to Plaintiffs' Second Request for Production of Documents (docket no. 102); and (5) Plaintiffs' Motion to Enforce Subpoena to MDOC (docket no. 103). Plaintiffs did not respond to Defendants' Motion to Compel; however, Defendants have filed responses to each of Plaintiffs' Motions to Compel, and the MDOC responded to Plaintiffs' Motion to Enforce Subpoena. (Docket nos. 90, 94, 106, 107.) Plaintiffs filed reply briefs to Defendants' Response to Plaintiffs' third Motion to Compel (docket no. 109) and to the MDOC's Response to Plaintiffs' Motion to Enforce Subpoena (docket no. 110). The parties have also filed Joint Statements of Resolved and Unresolved Issues with regard to Plaintiffs' first two Motions to Compel. (Docket nos. 95, 97, 133.) Additionally, the parties and the MDOC have filed Supplemental Briefs with regard to Plaintiffs' third Motion to Compel and Plaintiffs' Motion to Enforce Subpoena. (Docket nos. 119, 120, 122, 123.) The Motions have been referred to the undersigned for consideration. (Docket nos. 85, 92, 108.) The Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f). The Court is now ready to rule pursuant to 28 U.S.C. § 636(b)(1)(A).

## I.     Discovery Standards

The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad.  *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998).  Parties may obtain discovery on any matter that is not privileged, is relevant to any party's claim or defense, and is proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Information need not be admissible in evidence to be discoverable.  Fed. R. Civ. P. 26(b)(1).  But the scope of discovery is not unlimited.  "District courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce."  *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

Rules 33 and 34 allow a party to serve interrogatories and requests for production of documents on an opposing party.  Fed. R. Civ. P. 33, 34.  A party receiving these types of discovery requests has thirty days to respond with answers or objections.  Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A).  Rule 30 allows a party to conduct a deposition of any person without leave of court, subject to certain exceptions.  Fed. R. Civ. P. 30(a)(1).  If the party receiving discovery requests under Rules 33 or 34 fails to respond properly, or if the person whose deposition is sought under Rule 30 fails to properly comply with the rule, Rule 37 provides the party who sent the discovery or noticed the deposition the means to file a motion to compel. Fed. R. Civ. P. 37(a)(3)(B).

Federal Rule of Civil Procedure 45 governs subpoenas and provides that a non-party served with a subpoena may make written objections to the subpoena before the earlier of the

time specified for compliance or 14 days after the subpoena is served. Fed. R. Civ. P. 45(d)(2)(B). "The filing of the objection suspends any duty to produce the subpoenaed documents, until the party serving the subpoena procures an order compelling production" from the issuing court. *Matthias Jans & Assoc., Ltd. v. Dropic*, No. 01-MC-26, 2001 WL 1661473, at *1 (W.D. Mich. Apr. 9, 2001); *see also* Fed. R. Civ. P. 45(d)(2)(B)(i). Any order compelling production, however, "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). This section of Rule 45 was added to protect non-parties "against significant expense resulting from involuntary assistance to the court." Fed. R. Civ. P. 45 (Advisory Committee Notes, 1991 Amendment, Subdivision (c)).

II.     **Motion to Compel Responses to Plaintiffs' First Request for Production of Documents and Deposition Testimony and Motion for Protective Order [82]**

Plaintiffs raise several issues in the instant Motion to Compel, some of which have been resolved, according to the parties' Joint Statement of Resolved and Unresolved Issues. (Docket no. 95.) The Court will now address the unresolved issues in turn.

A.      *Plaintiffs' Request for Production (RFP) no. 1*

Plaintiffs' RFP no. 1 asks Defendants to:

Please produce the full and complete files for the Plaintiffs, including the following files:
a.  Institutional and central office file;
b.  Medical file;
c.  Psychiatric and/or psychological treatment file[;]
d.  Grievance file;
e.  Counselor file;
f.  Any other file maintained at any institution where a Plaintiff was housed, for each individual Plaintiff

(Docket no. 82-2 at 4.) Plaintiffs assert that Defendants failed to produce the parole files for all Plaintiffs in response RFP no. 1. (Docket no. 82 at 14.) Plaintiffs also seek an order compelling

Defendants to certify that they have made a complete production with regard to this RFP. (*Id.* at 15.)

Defendants argue that parole records do not fall within the categories of information requested in RFP no. 1, and if Plaintiffs want their parole files, they need to ask for them through a new request for production so that Defendants have an opportunity to respond and/or object as necessary. (Docket no. 90 at 6.) The Joint Statement of Resolved and Unresolved Issues indicates that Defendants have agreed to produced Plaintiffs' parole files to the extent that they have not already been produced, but Defendants maintain their position that RFP no. 1 does not include a request for Plaintiffs' parole files,. (Docket no. 95 at 2-3.) Accordingly, this issue is partially resolved.

With respect to Defendants' assertion that Plaintiffs' RFP no. 1 does not request Plaintiffs' parole files, the Court disagrees with Defendants and holds that it does. The RFP seeks Plaintiffs' full and complete files. By prefacing the enumerated list of specific files with the phrase "including the following," Plaintiffs created a non-exhaustive list of specific files. Therefore, the absence of "parole files" from the list does not mean that they were excluded from the RFP. The Court finds that Plaintiffs' broad request for production of "the full and complete files for the Plaintiffs" encompasses a request for parole files.

Plaintiffs' request for an order directing Defendants to certify that they have made a complete production with respect to RFP no. 1 also remains unresolved. Defendants do not oppose this request in their Response to Plaintiffs' Motion, and the Court does not find the request to be inappropriate or particularly burdensome. Accordingly, the Court will grant Plaintiffs' Motion in this regard and order Defendants to amend their answer to Plaintiffs' RFP no. 1 to certify that all responsive files (including Plaintiffs' parole files) have been produced.

Plaintiffs' RFP nos. 22 and 27 ask Defendants to:

> 22.   Please produce any and all photographs and/or video camera footage documenting or showing injury to each or any of the Plaintiffs during his incarceration in any MDOC facility, including any images that are stored in digital cameras, DVRs, tasers or other electronic control devices, or stored on a removable storage device, including but not limited to flash memory cards. **If responsive documents no longer exist, please so indicate and provide the retention schedule and date of destruction.**
>
> 27.   Please produce any and all documents, photographs, video camera footage and audio recordings of the following locations on the specified dates, including any responsive information that is stored in digital cameras, DVR[s], tasers or other electronic control devices, or stored on a removable storage device, including but not limited to flash memory cards. **If any responsive photograph, video camera footage and/or audio recording no longer exists, please so indicate[] and provide the retention schedule and date of destruction**: [following the text of this RFP is an enumerated list of 23 locations and dates for which the above information is sought].

(Docket no. 82-2 at 13, 14-16 (emphasis added).)  In their supplemental response to RFP no. 22, Defendants stated that "[t]o the extent Defendants understand what Plaintiffs seek, any documents or tangible things that may be responsive to this request have been produced in response to Request[] No. 1, Request No. 27, or Request No. 28."  (Docket no. 82-4 at 21.)  In their supplemental response to RFP no. 27, Defendants stated, in relevant part:

> To the extent Defendants understand what Plaintiffs seek, and to the extent documents responsive to Request no. 27 (g), (m), (p), (v), and (w) could be located and identified, it has been produced in the enclosed CD. . . . As for Request no. 27 (a)-(f), (h)-(k), (n)-(o), or (q)-(u), upon information and belief, a search has been conducted and no documents or tangible things have been identified.

(*Id*. at 24.)

Plaintiffs assert that Defendants have not answered the portions of RFP nos. 22 and 27 highlighted in bold above.  (Docket no. 82 at 16.)  Plaintiffs argue in this regard that (1) the materials sought are central to their claims; (2) Defendants, who have legal interests adverse to

those of Plaintiffs, have exclusive control over these materials; and (3) the materials should have been preserved. (*Id.*) They claim that they are entitled to learn whether the materials sought through these RFPs ever existed, and, if so, the circumstances under which the materials were destroyed. (*Id.*)

Defendants inform that Plaintiffs already possess the MDOC's retention schedule, as it was provided to them in the state-court proceedings. (Docket no. 90 at 8 n.4.) Defendants then proceed to argue that Plaintiffs are asking them, in essence, "to answer an interrogatory in the context of a request for production and confirm that 'destroyed' information previously existed when Defendants do not know and cannot determine whether the information existed in the first instance." (*Id.* at 8.) Defendants claim that this is an impossible task, and in the form of a rhetorical question, they assert that if they do not know whether Plaintiffs were captured on footage in the first instance, they cannot confirm either the existence of the footage or the destruction of the footage. (*Id.*)

Essentially, Defendants assert that they do not know and they are unable to determine whether any other documents or materials responsive to RFP nos. 22 and 27 previously existed and have since been destroyed. The Court cannot order Defendants to produce that which they do not have, and it will therefore deny Plaintiffs' Motion to Compel in this regard. Nevertheless, because Defendants' responses to RFP nos. 22 and 27 are wholly non-responsive to the portions of Plaintiffs' RFPs at issue, the Court will order Defendants to amend their responses to clarify that the MDOC's retention schedule has already been produced and that Defendants have no knowledge of any other previously-existing responsive documents or materials, or the destruction thereof.

*C.      Plaintiffs' RFP no. 25*

Through RFP no. 25, Plaintiffs seek "any and all documents to which any named Defendant was a recipient which discusses and/or identifies Plaintiffs as victims of sexual abuse and/or participants in litigation and/or PREA [Prison Rape Elimination Act] investigations." (Docket no. 82-2 at 14.)  The relevant portion of Defendants' supplemental response to this request states, "To the extent that Plaintiffs' request seeks documents covered by attorney-client privilege, Defendants would object to producing."  (Docket no. 82-4 at 22.)

Plaintiffs assert that Defendants have failed to produce a privilege log in accordance with Federal Rule of Civil Procedure 26(b)(5) for any documents responsive to this request that were withheld on the basis of privilege, and Plaintiffs therefore ask the Court to compel Defendants to produce one.  (Docket no. 82 at 17.)  Plaintiffs then advise that Defendants have informally indicated that they did not withhold documents responsive to RFP no. 25 on a claim of privilege. (*Id.*)  If this is the case, Plaintiffs argue, "the assertion needs to be overruled or Defendants need to update their answers or provide a log."  (*Id.*)

In response, Defendants assert that RFP no. 25 is so broadly worded that it could have been construed to seek privileged emails or other communications from defense counsel to Defendants.  (Docket no. 90 at 9.)  Defendants explain that because Rule 26 allows discovery of only non-privileged matters, they interpreted the RFP to not seek such privileged information. (*Id.*)  As a result, Defendants assert, they did not withhold any privileged documents from their production responsive to RFP no. 25, and they therefore do not need to provide a privilege log. (*Id.* at 10.)  Defendants assert that they provided the supplemental response cited above to preserve their objection of privilege in the event that their interpretation of RFP no. 25 was

incorrect.  (*Id.*)   Defendants indicate that they will voluntarily amend their answer to make that clear.  (*Id.*)

Plaintiffs do not challenge Defendants' interpretation of RFP no. 25.  Accordingly, the Court will deny Plaintiffs' Motion to Compel Defendants to produce a privilege log, and it will order Defendants to amend their response to RFP no. 25 to clarify that they did not withhold any documents from their production on the basis of privilege.

### D.     *Plaintiffs' RFP nos. 6-9 and the Deposition of Marshaun Robinson*

Plaintiffs' RFP nos. 6-9 seek documents related to grievances:

6.  Please produce all reports and/or data compilations detailing grievances filed together with all results, determinations, and responses for grievance categories 03, 05, 06, 07, 09, 11, 15, 17, 19, 22, 26, 27, 28 at the [Alger, Baraga, Bellamy Creek, Cotton, Ionia, Macomb, Michigan Reformatory, Oaks, and St. Louis Correctional Facilities] from 2010 to present[.]

7.  Please produce copies of all grievances filed by all Plaintiffs against all named Defendants, together with all responses.

8.  Please produce copies of all grievances filed against all named Defendants, together with all responses, from 2010 to present.

9.  Please produce copies of all grievances filed for claims of retaliatory actions by staff at the [Alger, Baraga, Bellamy Creek, Cotton, Ionia, Macomb, Michigan Reformatory, Oaks, and St. Louis Correctional Facilities] from 2010 to present, together with all responses[.]

(Docket no. 82-2 at 5-7.)  Defendants' response to RFP no. 8 is relevant here:

As discussed during the meet and confer conference, grievances are tracked and kept by the name of the prisoner filing the grievance and not by the individuals who are being grieved.  And, upon information and belief, no report or data compilation exists that could identify grievances filed based solely on the name of the individual being grieved.  Therefore, to respond to this request would require that every grievance kept by the MDOC be reviewed by hand to determine whether the named Defendants were named in the grievance.  Accordingly, Defendants object to the production of information responsive to this request because it is irrelevant, overly broad and unduly burdensome.

(Docket no. 82-4 at 11-12.)

Plaintiffs later discovered through the deposition testimony of Marshaun Robinson, a grievance coordinator at the Bellamy Creek Correctional Facility, that Defendants' representations in this regard were not entirely correct. (Docket no. 82 at 20-22.) Specifically, Mr. Robinson testified that he prepares a monthly report of the grievances filed at Bellamy Creek, which includes the names of the staff members grieved. (*Id*. at 20-21; docket no. 90 at 14-15.) He also testified that the Bellamy Creek Correctional Facility previously used the "ITS database" to store grievance information, but in 2015, it began using the MDOC's grievance information database that is used by MDOC facilities statewide. (Docket no. 82 at 21; docket no. 82-6 at 11, 21; docket no. 90 at 14.) Mr. Robinson further testified that the MDOC's statewide database has a field in which he can enter the name of the staff member being grieved. (Docket no. 82 at 21-22; docket no. 82-6 at 11.)

Plaintiffs assert that during a break at Mr. Robinson's deposition, Defendants' counsel confirmed that Defendants had not produced Mr. Robinson's reports to Plaintiffs in response to RFP nos. 6-9, but he agreed to produce the reports and the databases referenced by Mr. Robinson, and he also agreed to allow Plaintiffs to re-depose Mr. Robinson regarding the forthcoming reports and databases if necessary. (Docket no. 82 at 21.) Plaintiffs explain that Defendants produced hard copies of Mr. Robinson's 2015 and 2016 reports soon thereafter, but they complain that the documents produced are not completely responsive to Plaintiffs' request at Mr. Robinson's deposition or to Plaintiffs' RFP no. 6. (*Id*. at 22.) Specifically, Plaintiffs assert that the production did not include the ITS database or the MDOC database and that the reports produced do not include a field for the name of the staff member being grieved. (*Id*.) Plaintiffs therefore ask the Court to compel Defendants to produce the databases identified by

Mr. Robinson in their native form and permit Plaintiffs to re-depose Mr. Robinson once the databases have been produced. (*Id*. at 23.)

Defendants argue that the Court should not compel the production of the databases because they were not subject to production under the plain language of the subpoena *duces tecum* to Mr. Robinson. (Docket no. 90 at 16-17; docket no. 90-5.) They also argue that Plaintiffs did not specifically request the production of databases through RFP no. 6, and when it became apparent through conversations among counsel that Plaintiffs were indeed seeking databases, Defendants did not agree to their production. (*Id*. at 17; docket no. 90-3 at 2.) Defendants explain that Plaintiffs eventually agreed to limit the scope of RFP no. 6 to seek only reports reflecting grievances filed, and they argue that Plaintiffs' request for the databases identified by Mr. Robinson is now beyond the scope of RFP no. 6 as modified. (*Id*. at 17 (citing docket no. 82-4 at 11).) Defendants further argue that they have consistently objected to the production of MDOC databases in the context of state and federal litigation for reasons such as overbreadth, relevance, burden, and security concerns. (*Id*. at 17-18.) Defendants assert that they therefore should not be compelled to produce the databases. (*Id*. at 18.)

The Court finds that while RFP no. 6 does not specifically contain the word "databases," the phrase it does contain, "data compilations detailing grievances," does encompass a request for databases. Nevertheless, the Court also finds that Defendants' security concerns associated with producing databases in their native format to Plaintiffs are legitimate. The Court further finds that the sheer breadth of irrelevant, sensitive information that would be disseminated through the production of the databases is inappropriate and disproportionate to the needs of this case. The Court will therefore deny Plaintiffs' Motion to Compel the production of the ITS database and the MDOC's grievance database. To the extent that these databases are within

Defendants' possession, custody, or control, however, the Court will order Defendants to generate reports responsive to RFP nos. 6-9 from the databases and produce the reports to Plaintiffs. As an example, with regard to RFP no. 8, Defendants are ordered to generate a report listing all the grievances filed against the remaining named Defendants from 2010 to the present. Defendants are ordered to produce these reports within twenty-one (21) days of this Opinion and Order. If the databases are not within Defendants' possession, custody, or control, Defendants must certify as such to Plaintiffs within twenty-one (21) days of this Opinion and Order. Plaintiffs may re-depose Marshaun Robinson at a mutually agreeable time and place within forty-five (45) days of this Opinion and Order regarding only (1) the hard copies of the 2015 and 2016 grievance reports that Mr. Robinson generated for the Bellamy Creek Correctional Facility; and (2) any reports generated from the grievance databases that Defendants produce in compliance with this Order.

### E.      Deposition of Christine Wakefield

Plaintiffs assert that Defendants have failed to produce Grievance Administrator Christine Wakefield for a scheduled March 8, 2017 deposition despite previously agreeing to do so.[2] (Docket no. 82 at 23, 24.) Plaintiffs argue that Defendants should be compelled to produce Ms. Wakefield because (1) she was involved in allegations in the instant Complaint regarding John Doe 5 and his prolonged placement in solitary confinement; (2) she is responsible for handling all PREA grievances, i.e., grievances in which a prisoner complains that he was sexually assaulted, which are purportedly a cause of the alleged retaliation in this matter, and grievances in which a prisoner asserts that he has been retaliated against for complaining about

---

[2] Plaintiffs have not attached the Notice of Deposition for Christine Wakefield to their Motion as required by Eastern District of Michigan Local Rule 37.2.

being sexually assaulted; and (3) she is responsible for ensuring that all prisoners are educated about their rights under MDOC Policy Directives and the PREA.  (*Id.* at 23-24.)

Defendants explain that they did not initially object to Ms. Wakefield's deposition, but after reviewing the pleadings, Plaintiffs' prisoner files, and Marshaun Robinson's deposition transcript, they later informed Plaintiffs that Ms. Wakefield's deposition is not relevant to Plaintiffs' retaliation claims in this matter because they do not involve allegations that Defendants violated the PREA, and Ms. Wakefield did not conduct any PREA investigations related to the allegations in the instant Complaint.  (Docket no. 90 at 18.)

In response to Plaintiffs' Motion, Defendants argue against producing Ms. Wakefield for a deposition by contesting Plaintiffs' assertion that she was involved in John Doe 5's placement in solitary confinement.  (*Id.* at 18-19.)  Specifically, Defendants argue that there are no claims or factual allegations against Ms. Wakefield in the Second Amended Complaint with regard to John Doe 5, and none of John Doe 5's grievances involve Ms. Wakefield.  (*Id.* at 19.) Defendants also argue that by seeking the deposition of Ms. Wakefield, "Plaintiffs are trying to shift the focus of this lawsuit (and the discovery) to the underlying claims of sexual or physical abuse, assault, or harassment that form the basis of the state-court litigation and the federal litigation before Judge Cleland."  (*Id.*)  In this regard, Defendants argue that aside from possibly John Doe 1, Plaintiffs do not allege that Defendants retaliated against them for filing grievances related to the underlying claims of sexual assault.  (*Id.*)  Therefore, Defendants argue, questions concerning sexual misconduct and how PREA grievances are filed, investigated, and resolved, which appears to be Plaintiffs' purpose for deposing Ms. Wakefield, are not relevant to this case. (*Id.* at 20.)

The parties' arguments reflect that Christine Wakefield may have some information relevant to the allegations in the instant Complaint, particularly with regard to John Doe 5's solitary confinement and to grievances filed by John Doe 1. Accordingly, the Court will permit Plaintiffs to depose Ms. Wakefield regarding any non-privileged matter that is relevant to the parties' claims or defenses and proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1). The Court will therefore order Plaintiffs to re-notice Ms. Wakefield's deposition for a mutually agreeable time and place, and it will order the parties to complete her deposition within forty-five (45) days of this Opinion and Order

F.    *Plaintiffs' Motion for a Protective Order Regarding Document Inspections*

Plaintiffs also move for a protective order governing Defendants' production of documents for inspection. (Docket no. 82 at 25-30.) According to the Joint Statement of Resolved and Unresolved Issues, the parties have resolved their dispute regarding the locations at which the inspection of certain documents will take place, but they were unable to resolve the issue of whether Defendants' counsel or their representatives may be present for the inspections. (Docket no. 95 at 3-4.) Plaintiffs explain that Defendants' counsel was present during the inspections that have already occurred, and when Plaintiffs' counsel copied or expressed an interest in a document, Defendants' counsel then picked up the document and labeled it. (Docket no. 82 at 28.) Plaintiffs' claim that this "watch-and-record process" utilized by Defendants breaches work-product confidentiality and forces Plaintiffs to make a Hobson's choice – either copy the document knowing that Defendants will mark it, or forego copying the document. (*Id.* at 28-29.) Plaintiffs assert that any argument offered by Defendants suggesting that the value of any information derived from Plaintiffs' selection of documents is nominal or speculative is belied by Defendants' insistence on identifying and labeling each and every document copied by

Plaintiffs' counsel. (*Id*. at 30.) Plaintiffs therefore urge the Court to issue an order prohibiting Defendants' counsel or their representatives from observing the inspections. (*Id*. at 28.)

Defendants explain that at the inspections, Defendants' representatives, either an attorney or a paralegal, sat in the room at the table with Plaintiffs' representative and worked on other projects. (Docket no. 90 at 23.) They further explain that when Plaintiffs' representative copied a document, Defendants' representative either set that document aside in a separate pile or marked it with a sticky note and placed it back in the same pile of documents. (*Id*.) Defendants then proceed to argue that Plaintiffs' assertion of work product is without merit. (*Id*. at 27.) Specifically, Defendants argue that (1) a party or the party's representative has a right to be present at an inspection to ensure the security of the documents produced; (2) there is nothing on the face of Defendants' documents that reflect the mental impressions of Plaintiffs' counsel; (3) thus far, Plaintiffs' selection of documents to be copied has been made by a paralegal, not an attorney, and Plaintiffs do not explain how the attorney work-product privilege applies to the work of a paralegal; and (4) it is unclear how Plaintiffs' selection of documents to be copied can constitute work product where Defendants could simply send Plaintiffs a request for production of those documents. (*Id*.)

Defendants are correct in one aspect – they are certainly entitled to be present at an inspection to ensure the security of the documents and other materials being inspected. Defendants' other arguments, however, miss the mark. The original purpose of the work product doctrine, as articulated by the Supreme Court, was to allow an attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference . . . to promote justice and to protect [his] clients' interests." *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006)

(quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)).  The current work product doctrine is set forth in Federal Rule of Civil Procedure 26(b)(3), and it protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  *Roxworthy*, 457 F.3d at 593; Fed. R. Civ. P. 26(b)(3)).

Several courts have extended the reach of the work-product doctrine beyond documents *prepared* in anticipation of litigation to documents *gathered* and *assembled* by or for a party's representative in anticipation of litigation, where the selection of particular documents could reveal the opposing attorney's thought process, legal strategy, or theory of the case.  *See, e.g., Quicken Loans, Inc. v. Brooks*, No. 07-13143, 2010 WL 11541991, at *4 (E.D. Mich. May 18, 2010) (documents gathered by non-attorney representatives at the request of attorney in anticipation of litigation protected by work-product doctrine); *Stratienko v. Chattanooga-Hamilton Cty. Hosp. Auth.*, No. 1:07-CV-258, 2008 WL 11342544, at *6 (E.D. Tenn. Nov. 4, 2008); *Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*, 959 F.2d 1158, 1166 (2d Cir. 1992) ("[W]here a request is made for documents already in the possession of the requesting party, with the precise goal of learning what the opposing attorney's thinking or strategy may be, even third-party documents may be protected."); *Am. Floral Servs., Inc. v. Florists Transworld Delivery Ass'n*, 107 F.R.D. 258, 261 (N.D. Ill. 1985) ("There can be little doubt that forced disclosure of the selection made by [a] requesting party's lawyer from among [certain] documents, necessarily reflect[s] his or her assessment of what is and is not important in the case, [and] would run afoul of (and would be precluded by) the Doctrine.").

Here, Plaintiffs' attorneys and/or their legal assistants are purportedly reviewing and inspecting thousands of documents in the presence of Defendants' representatives, and they are

then selecting and copying a relatively small number of those documents for further examination, after which Defendants' representatives mark, label, or set aside those documents copied by Plaintiffs. Defendants have advanced no valid reason for marking or labeling these documents, and the Court conceives no other reason for doing so except to discern the legal thought process or strategy of Plaintiffs' counsel. Under these circumstances, and in light of the precedent cited above, the Court finds that the selection of documents for scanning or copying performed by Plaintiffs' attorneys or their legal assistants is protected by the work-product doctrine. The Court will therefore grant in part and deny in part Plaintiffs' Motion for Protective Order by permitting Defendants' representatives to be present at any future document inspections but prohibiting Defendants' representatives from marking, labeling, setting aside, or otherwise identifying the documents selected for copying by Plaintiffs' representatives.

## III. Motion to Compel Complete Responses to Plaintiffs' Interrogatories Regarding Trial Witnesses [88]

The court entered a Scheduling Order on March 22, 2016, which required that the names of all witnesses, lay and expert, be exchanged by June 20, 2016. (Docket no. 30 at 1.) The parties filed their respective witness lists by the deadline (docket nos. 55, 56), and Plaintiffs, finding Defendants' list to be inadequate in several respects, then served Defendants with Interrogatories Regarding Trial Witnesses on July 8, 2016 (docket no. 88 at 2-3; docket no. 88-3). The interrogatories asked Defendants to state the contact information, current employment information, and a description of the anticipated testimony for each witness on their Witness List. (Docket no. 88-3 at 3.) Defendants filed objections and answers to Plaintiffs' Interrogatories on August 5, 2016, which, Plaintiffs' claim, are also inadequate. (Docket no. 88 at 4; docket no. 88-4.) Defendants subsequently filed an Amended Witness List and served a supplemental response to Plaintiffs' Interrogatories on August 23, 2016. (Docket nos. 59, 88-5,

88-6.)  According to Plaintiffs, these documents suffer from the same deficiencies as the original documents.  (Docket no. 88 at 4.)

Plaintiffs therefore filed the instant Motion through which they seek a court order (1) striking any new witnesses named in Defendants' Amended Witness List as untimely; (2) striking any witnesses for whom full identification and designation has not been provided; (3) compelling Defendants to provide full and complete answers to Plaintiffs' Interrogatories Regarding Trial Witnesses; and (4) precluding the testimony of any witnesses for whom full interrogatory answers have not been provided.  (Docket no. 88 at 5, 20.)  Defendants responded to Plaintiffs' Motion, and the parties subsequently filed a Joint Statement of Resolved and Unresolved Issues in which they indicated that nothing had been resolved.  (Docket nos. 94, 97.) Defendants then filed a Second Supplemental Witness List along with a Second Supplemental Response to Plaintiffs' Interrogatories.  (Docket no. 98; docket no. 133-1.)  In light of Defendants' supplements, the Court recently ordered the parties to file another Joint Statement of Resolved and Unresolved Issues.  Through the updated Joint Statement, the parties indicate that they have resolved all but three issues regarding Plaintiffs' instant Motion to Compel, which the Court will now address in turn.  (*See* docket no. 133.)

First, Plaintiffs assert that they will agree to Defendants' withholding of contact information for current MDOC employees if:  (1) those employees agree that Defendants' counsel may accept service on their behalf; and (2) Defendants provide Plaintiffs with an employee's contact information within fourteen days of the employee's departure from employment with the MDOC.  (Docket no. 133 at 3.)  Defendants' counsel agrees to accept service on behalf of current MDOC employees but does not agree to notify Plaintiffs if and when an employee leaves the MDOC's employment, unless first prompted by Plaintiffs, e.g., in the

form of a subpoena or a list of trial witnesses.  (*Id*.)  Defendants assert that it would be unduly burdensome to monitor the employment status of the more than four hundred MDOC employees on the parties' witness lists.  (*Id*.)  The Court agrees; such a task is likely to result in the needless waste of resources, particularly where Plaintiffs' need to subpoena all of those employees never arises.  Plaintiffs' suggestions that the burden could be cured by requesting periodic updates from the MDOC and notification from employees upon separation are insufficient, as they place the ball in the court of non-parties who do not have an interest in this litigation and who are not likely to report consistently or accurately.  The Court will therefore grant in part and deny in part Plaintiffs' Motion in this regard.

Next, Plaintiffs complain that Defendants filed two supplemental witness lists without leave of court after the June 20, 2016 deadline set forth for the exchange of final witnesses in the Scheduling Order.  (Docket no. 133 at 4.)  Plaintiffs oppose the submission of any additional witness lists without prior court approval.  (*Id*.)  Defendants disagree with Plaintiffs' position in light of the fact that certain Plaintiffs, Defendants, and claims were recently reinstated in this matter.  (*Id*.)  The Court finds that Plaintiffs' position is inconsistent with Federal Rule of Civil Procedure 26(a)(3) as well as the court's Scheduling Order, which explicitly instructs the parties to file witness lists as part of the Joint Final Pretrial Order.  (*See* docket no. 30 at 5.) Accordingly, the Court will deny Plaintiffs' Motion with regard to this issue.

Lastly, Plaintiffs propose to withdraw the portion of their Motion to strike any witnesses added after the June 20, 2016 deadline and instead depose those witnesses if necessary.  (Docket no. 133 at 4-5.)  Defendants object to Plaintiffs taking any additional depositions on the bases that Plaintiffs could have deposed the newly-added witnesses at an earlier date over the last six months and that discovery should not be expanded in this matter beyond the recently reinstated

Plaintiffs and Defendants. (*Id*. at 5.) Plaintiffs reply that they did not previously depose the witnesses at issue because they were the subject of this pending motion to strike. (*Id*.) The Court is aligned with Plaintiffs' position in this instance and will therefore deny Plaintiffs' Motion to strike the witnesses added by Defendants after June 20, 2016, and grant Plaintiffs' Motion to depose those witnesses. Any depositions taken in this respect must be completed within forty-five (45) days of this Opinion and Order.

## IV.    Defendants' Motion to Compel Certain Depositions and Preserve the Right to Take Others After Discovery Cut-Off As Needed [101]

On June 2, 2017, the discovery motion deadline, Defendants filed the instant Motion for an order (1) compelling the depositions of John Does 3, 4, and 12 and permitting them to be taken after the June 16, 2017 discovery deadline on a date to be determined by the parties; and (2) to preserve Defendants' right to take the depositions of John Does 2 and 8 after the discovery deadline if they are reinstated as parties in this case. (Docket no. 101 at 2, 4.) Defendants sought Plaintiffs' concurrence in this Motion through a May 30, 2017 email, to which Plaintiffs responded as follows:

> We do not object to your ability to take the deps of 2 and 8 should they be reinstated. We also do not object to you taking the other deps beyond the current discovery deadline.

(Docket no. 101 at 2; docket no. 101-1 at 2.) Defendants explain in their Motion that they sought but were unable to obtain available dates for the depositions of John Does 3 and 4 before the close of discovery. (Docket no. 101 at 12.) They also explain that the incarceration of John Doe 12 in the Wayne County Jail on separate felony charges has limited and complicated his availability for deposition. (*Id*.) In light of these facts, and the fact that some of John Does 2 and 8's claims were reinstated on October 18, 2017, the Court will grant Defendants' Motion. Accordingly, to the extent that the depositions of John Does 2, 3, 4, 8, and 12 have not yet been

taken in this matter, the Court will order Defendants to re-notice their depositions for a mutually agreeable time and place, and it will order the parties to complete those depositions within forty-five (45) days of this Opinion and Order.

**V.  Plaintiffs' Motion to Compel Complete Responses to Plaintiffs' Second Request for Production of Documents [102]**

Plaintiffs' Second Request for Production of Documents consists of four RFPs, which seek (as summarized by Plaintiffs) "communications discussing Plaintiffs or the *Doe* litigation, information related to the placement and removal of class notices, and warden meeting minutes and documents discussing class notices, Doe communications, and the *Doe* litigation." (Docket no. 102 at 2; docket no 102-2.)  Defendants objected to these RFPs primarily on the bases that they are overly-broad and unduly burdensome in temporal and substantive scope and that they seek information not within Defendants' possession, custody, or control; however, Defendants did produce some responsive documents.  (Docket no. 106 at 7; docket no. 102-3.)  The parties then proceeded to engage in discussions to resolve their dispute regarding these RFPs, and were able to do so with regard to several issues.  (Docket no. 102 at 3.)  Plaintiffs assert that despite an anticipated resolution of the other issues, the discovery motion deadline necessitated the filing of the instant Motion.  (*Id*. at 3-4.)  Therefore, in the Motion, Plaintiffs suggest that the Court stay its consideration of the Motion pending the parties' efforts to resolve it.  (*Id*. at 4.)

The parties subsequently filed Supplemental Briefs to inform the Court of the result of those efforts.  (Docket nos. 119, 122.)  According to the parties, the only issue remaining with regard to Plaintiffs' Second Request for Production of Documents relates to the scope of RFP no. 1, which asks Defendants to:

> Please produce any emails, text messages or other communications of any sort from August of 2013 to the present from or to any named defendant in which the Doe litigation or the plaintiffs' status as plaintiffs in litigation against the MDOC

was discussed. Such messages would include but not be limited to any messages containing the words: "Doe;" "John Doe;" any of the plaintiffs' names; or any of the plaintiffs' lawyers' names.

(Docket nos. 119, 122; docket no. 102-2 at 4.) The parties indicate that they have agreed upon a search term protocol to be used by Defendants in searching for responsive documents that limits the substantive scope of the request, but they continue to dispute the temporal scope of the request. Essentially, Defendants agree to produce (and have since produced) non-privileged, responsive documents dated from August, 1 2013 through November 2, 2015, the date that the instant Complaint was filed, but they object to producing documents responsive to RFP no. 1 generated after November 2, 2015, through the present date.

In support of their position that Defendants should produce documents generated after November 2, 2015, Plaintiffs argue that "Defendants could have generated and received correspondence regarding the allegations after and/or in response to the Complaint itself being filed, including but not limited to inquiries by administration or coworkers regarding the veracity of the allegations and/or discussion amongst the Defendants about the fact of, and veracity of, the allegations." (Docket no. 119 at 8.) Plaintiffs also argue that their claims are not limited to what occurred prior to November 2, 2015, because the Second Amended Complaint alleges that the retaliation and harassment is ongoing. (*Id*.) Plaintiffs further argue that they have agreed to apply the search protocol to documents generated after November 2, 2015, which will render it highly likely that the results of the search will yield relevant documents while reducing the number of documents that Defendants will have to review. (*Id*. at 9.) Finally, Plaintiffs argue that "Defendants have no basis on which to impose an artificial date after which they will refuse to produce documents – particularly, when such documents go to the core issues in this case,

including what Defendants knew about Plaintiffs' participation in the litigation and what they did in response." (*Id*. at 10.)

Defendants argue that it is unlikely that there will be any information relevant to the issues in this case in documents generated after November 2, 2015, because Plaintiffs' general allegation of ongoing retaliation asserted in the Second Amended Complaint has not been borne out in Plaintiffs' deposition testimony. (Docket no. 122 at 8-12.) Defendants also argue that this is a garden-variety retaliation case that is limited in nature and not factually or legally complex, and it therefore does not require that hundreds of thousands of dollars be spent to conduct the large-scale document review project that would be required to fully respond to Plaintiffs' Second Request for Production of Documents and Plaintiffs' subpoena to the MDOC (discussed below). (*Id*. at 12.) Defendants explain that for documents generated between August 1, 2013 and November 2, 2015, the search term protocol rendered a grouping of 4,300 potentially responsive documents, and a review of those documents yielded only 400 responsive documents that were ultimately produced to Plaintiff. (*Id*. at 7, 13.) Defendants assert that if they are compelled to produce responsive documents dated November 3, 2015 to April 17, 2017 (the date of Defendants' Response to Plaintiffs' Second Request for Production), they would have to review an additional 8,000 documents for responsiveness, which review would take an estimated 160 reviewer hours and $20,000 to complete. (*Id*. at 7, 15-16.) Defendants argue that by asking the "Court to compel Defendants to review another 8,000 documents that hit on a search term after their lawsuit was filed solely because they think that it *may* lead to the discovery of relevant information in this case because they think someone *might* have talked about the lawsuit after it was filed," Plaintiffs are engaging in a fishing expedition that contradicts the proportionality requirement of Rule 26. (*Id*. at 14 (emphasis in original).) Defendants ask the Court to deny

Plaintiffs' Motion in this regard or, if it is inclined to grant Plaintiffs' Motion, to order cost shifting related to the additional document review and production. (*Id*. at 15.)

The Court finds Defendants' argument that a search for documents responsive to RFP no. 1 generated after November 2, 2015 is unlikely to produce evidence of ongoing retaliation committed by Defendants to be persuasive, particularly in light of Plaintiffs' deposition testimony. Nevertheless, the Court also finds that Defendants' communications dated after November 2, 2015 could certainly contain relevant, non-privileged discussions regarding Plaintiffs and the veracity of the allegations in the instant Complaint. Any communications of this sort have the potential to be highly relevant to the parties' claims and defenses in this matter. The Court therefore finds that the temporal scope of Plaintiffs' request is proportional to the needs of this case and that the additional time and expense that Defendants will incur in reviewing documents generated after November 2, 2015 is outweighed by the potential benefit of the documents produced. The Court will therefore grant Plaintiffs' Motion with regard to this final unresolved issue related to Plaintiffs' Second Request for Production, and it will order Defendants to search for and produce within twenty-one (21) days of this Opinion and Order any documents responsive to the substantive scope of RFP no. 1, as limited by the parties, that are dated from November 3, 2015 through April 17, 2017, the date of Defendants' Response to Plaintiffs' Second Request for Production. The Court declines to order cost shifting as suggested by Defendants.

## VI.    Plaintiffs' Motion to Enforce Subpoena to MDOC [103]

The discovery requests and the underlying facts and procedural circumstances of Plaintiffs' Motion to Enforce Subpoena to MDOC are similar to those of the previous Motion addressed immediately above. Plaintiffs' subpoena *duces tecum* to the MDOC consists of four

document requests, which Plaintiffs summarize as seeking "the production of communications to and from litigation coordinators regarding Plaintiffs; communications and documents related to the placement and removal of class notices; meeting minutes and other documents discussing Doe communications, class notices, Doe misconduct issues and the *Doe* litigation; as well as CAJ 278 forms and other documents regarding the receipt, refusal or denial of food, shower, yard or privileges for Plaintiffs."  (Docket no. 103 at 2-3; docket no. 103-2.)  The MDOC objected to the requests primarily as overly broad and unduly burdensome in time and scope, but it did produce some documents responsive to the third and fourth requests.  (Docket no. 107 at 8; docket no. 103-3.)  Plaintiffs and the MDOC then engaged in discussions to resolve their disputes regarding the subpoena's document requests, but they were unable to resolve them by the discovery motion deadline.  (Docket no. 103 at 3.)  Plaintiffs therefore filed the instant Motion, but they requested that the court stay its consideration of the Motion pending further efforts to resolve the outstanding issues.  (*Id*. at 3-4.)

Plaintiffs and the MDOC filed Supplemental Briefs regarding the Motion approximately two months later, in which they advise that they were able to resolve a number of issues through their discussions, but some issues concerning Request nos. 1 and 3 remain.  (Docket nos. 120, 123.)  Plaintiffs' Request no. 1 seeks:

> Any and all communications to or from MDOC litigation coordinators to any named defendant or anyone within MDOC regarding the *Doe* litigation or any of the persons identified as John Does 1, 2, 3, 4, 5, 8, 9, 10 and 12 in *Doe v. Anderson*, E.D. Mich. Case No. 2:15-cv-13852, from August of 2013 to the present.

(Docket no. 103-2 at 3.)  Plaintiffs and the MDOC have agreed to apply the previously-discussed search-term protocol to this document request and further limit it to documents to or from the litigation coordinators at the MDOC facilities at dispute in this matter.  (Docket no. 120 at 8;

docket no. 123 at 8-9.)  They have also agreed to exclude documents containing the MDOC's attorneys' names from review and to relieve the MDOC from producing a privilege log for those documents.  (Docket no. 123 at 9-10.)  These limitations have reduced the number of documents to be reviewed for responsiveness to 11,000.  (Docket no. 123 at 10.)  Nevertheless, Plaintiffs and the MDOC continue to dispute the proper temporal and substantive scope of this request.

Plaintiffs assert that they seek this information to "shed light on who within the MDOC (including Defendants) were notified of the Plaintiffs' involvement with the *Doe* litigation, which persons were advised of matters such as Plaintiffs' meetings with and phone calls to attorneys, and when such information was communicated."  (Docket no. 120 at 8.)  Plaintiffs claim that these are all central issues in this case, and they are important in determining the chain of information that could support or rebut Defendants' denials of knowledge of Plaintiffs' participation in the litigation or their involvement with attorneys.  (*Id*. at 8-9.)  Also, Plaintiffs argue (as they did with respect to their previous Motion) that the MDOC has no basis on which to impose a cut-off date of November 2, 2015.  (*Id*. at 9.)  They further argue that the MDOC's argument that the request is burdensome is a non-starter where there are constitutional issues involved and the MDOC is the custodian of nearly all relevant records.  (*Id*. at 9-10.)

The MDOC argues that even as limited, the request is still overbroad and unduly burdensome, and it still seeks irrelevant information.  For example, the MDOC argues that Defendants have already produced documents sent to or received by them that discuss the litigation or Plaintiffs' status in the litigation; therefore, the instant request truly only seeks communications between the MDOC litigation coordinators and third parties, which have little to no relevance to Plaintiffs' claims against Defendants.  (Docket no. 123 at 11-12.)  The MDOC also argues that the four-year temporal scope of the request is overbroad.  (*Id*. at 13-14.)  The

MDOC further argues that, as a non-party, it is protected from the significant expense (an estimated $22,000) of responding to this subpoena under Federal Rule of Civil Procedure 45, and Plaintiffs should therefore bear the cost of production if Plaintiffs' Motion is granted. (*Id*. at 14-16.)

> Plaintiffs' Request no. 3 seeks:
>
> Any and all warden meeting minutes or other documents that involve or relate to or include facilities at which named defendants work and that describe or detail how communications with Plaintiffs in the *Doe* litigation should be handled; how class notices should be handled; how misconduct issues with Plaintiffs in the *Doe* litigation should be handled; or that discuss the *Doe* litigation in any respect.

(Docket no. 103-2 at 3.) Plaintiffs assert that they seek these documents to discover what, if any, guidance, information, or instructions Defendants received from the MDOC on the subjects stated in the request. (Docket no. 120 at 11.)

The MDOC indicates that any warden's meeting minutes responsive to this request from the six MDOC facilities at issue in this matter have already been produced to Plaintiffs. (Docket no. 123 at 16 n.7.) With respect to the remainder of the request, Plaintiffs and the MDOC have agreed to limit the search for responsive documents to six types of supervisory employees at the facilities at issue, e.g, wardens, deputy wardens, litigation coordinators, etc., and to documents distributed facility-wide. (*Id*. at 17.) The MDOC explains that after applying this limitation, there are 102 employees remaining whose email would need to be searched for responsive information. (*Id*.) It further explains that when the search term protocol is applied to the email accounts of those 102 employees, more than 95,000 hits are returned, not including document families, which could double the number of documents to be reviewed. (*Id*. at 17-18.)

The MDOC, therefore, continues to object to this request on the basis of burden, overbreadth, relevance, and duplicity. For example, the MDOC argues that this request is

duplicative of other discovery already produced by the named Defendants – specifically, emails that discuss the John Doe litigation sent to or from the named Defendants from August of 2013 through November 2, 2015, as well as any information in their possession related to the posting of class notices.  (Docket no. 123 at 18-19.)  The MDOC asserts that essentially, Request no. 3 seeks any information in the possession of more than 100 non-party MDOC employees that was not sent to, received by, or in the possession of Defendants, and because Defendants were not aware of this other information, it cannot be relevant to Plaintiffs' claims against Defendants in this matter.  (*Id*.)  The MDOC argues that it would have to review at least 95,000 documents at an estimated cost of $180,000 to identify documents responsive to this request, which is nothing more than a fishing expedition to see if any other non-party MDOC employee has discussed issues related to Plaintiffs.  (*Id*. at 19-20, 21.)  The MDOC further argues that where Plaintiffs' garden-variety retaliation claims are not novel or complex, the factual allegations underlying the claims are limited in both time and scope, and the information sought in this request is not related to the contested issues in this case, Plaintiffs' Motion should be denied.  (*Id*. at 20-21.)

Plaintiffs assert that they need the information in Request nos. 1 and 3 to determine who within the MDOC (including Defendants) were notified of Plaintiffs' involvement in the *Doe* litigation and to discover what guidance or instructions Defendants received from the MDOC regarding Plaintiffs.  But Defendants have already produced documents responsive to these requests, and that production presumably satisfies Plaintiffs' stated need for the information; any further production from non-party MDOC employees would be either duplicative or irrelevant. To the extent that Defendants' production does not satisfy Plaintiffs' need for the information, however, Plaintiffs fail to demonstrate how the additional information that they seek from hundreds of the MDOC's non-party employees has sufficient relevance to their claims against

Defendants to outweigh the burden to the MDOC of spending considerable time and expense in reviewing tens of thousands of documents. Plaintiffs' requests, even when limited by further agreement, are not proportional to the needs of this case; their overbreadth is fatal to Plaintiffs' Motion. The Court will therefore deny Plaintiffs' Motion to Enforce Subpoena to MDOC.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel Responses to Plaintiffs' First Request for Production of Documents and Deposition Testimony and Motion for Protective Order [82] is **GRANTED IN PART** and **DENIED IN PART** with regard to the unresolved issues as follows:

a. The Court holds that Plaintiffs' RFP no. 1 encompasses a request for Plaintiffs' parole files and orders Defendants to amend their answer to RFP no. 1 within twenty-one (21) days of this Opinion and Order to certify that all files responsive to the RFP (including Plaintiffs' parole files) have been produced to Plaintiffs;

b. Defendants are ordered to amend their responses to RFP nos. 22 and 27 within twenty-one (21) days of this Opinion and Order to clarify that the MDOC's retention schedule has already been produced and that Defendants have no knowledge of any other previously-existing responsive documents or materials, or the destruction thereof;

c. Plaintiffs' Motion to Compel Defendants to produce a privilege log is DENIED; however, Defendants are ordered to amend their response to RFP no. 25 within twenty-one (21) days of this Opinion and Order to clarify that they did not withhold any documents from their production on the basis of privilege;

d. Plaintiffs' Motion to Compel the production of the ITS database and the MDOC's grievance database is DENIED. To the extent that these databases are within

Defendants' possession, custody, or control, however, Defendants are ordered to generate reports responsive to RFP nos. 6-9 from the databases and produce the reports to Plaintiffs within twenty-one (21) days of this Opinion and Order. If the databases are not within Defendants' possession, custody, or control, Defendants must certify as such to Plaintiffs within twenty-one (21) days of this Opinion and Order. Plaintiffs may re-depose Marshaun Robinson at a mutually agreeable time and place within forty-five (45) days of this Opinion and Order regarding only (1) the hard copies of the 2015 and 2016 grievance reports that Mr. Robinson generated for the Bellamy Creek Correctional Facility; and (2) any reports generated from the grievance databases that Defendants produce in compliance with this Opinion and Order.

e. Plaintiffs' Motion to Compel the deposition of Christine Wakefield is GRANTED. Plaintiffs are ordered to re-notice Ms. Wakefield's deposition for a mutually agreeable time and place, and the parties must complete her deposition within forty-five (45) days of this Opinion and Order; and

f. Plaintiffs' Motion for Protective Order is GRANTED IN PART and DENIED IN PART. Defendants' representatives may be present at any future document inspections, but they are prohibited from marking, labeling, setting aside, or otherwise identifying the documents selected for copying by Plaintiffs' representatives.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel Complete Responses to Plaintiffs' Interrogatories Regarding Trial Witnesses [88] is **GRANTED IN PART** and **DENIED IN PART** with regard to the unresolved issues as follows:

a. Defendants may withhold from Plaintiffs the contact information of current MDOC employees, but Defendants' counsel must accept service on behalf of those employees, and they must provide the contact information of any recently-separated or –terminated employee to Plaintiffs' counsel when prompted to do so;

b. Plaintiffs' Motion to prohibit the submission of any additional witness lists without prior court approval is DENIED; and

c. Plaintiffs' Motion to strike any witnesses added by Defendants after June 20, 2016 is DENIED, and Plaintiffs' Motion to depose those witnesses is GRANTED. Any depositions taken in this respect must be completed within forty-five (45) days of this Opinion and Order.

**IT IS FURTHER ORDERED** that Defendants' Motion to Compel Certain Depositions and Preserve the Right to Take Others After Discovery Cut-Off as Needed [101] is **GRANTED**. To the extent that the depositions of John Does 2, 3, 4, 8, and 12 have not yet been taken in this matter, Defendants are ordered to re-notice their depositions for a mutually agreeable time and place, and the parties must complete those depositions within forty-five (45) days of this Opinion and Order.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel Complete Responses to Plaintiffs' Second Request for Production of Documents [102] is **GRANTED** with regard to the remaining unresolved issue. Defendants are ordered to search for and produce within twenty-one (21) days of this Opinion and Order any documents responsive to the substantive scope of RFP no. 1, as limited by the parties, dated from November 3, 2015 through April 17, 2017, the date of Defendants' Response to Plaintiffs' Second Request for Production.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Enforce Subpoena to MDOC [103] is **DENIED**.

### NOTICE TO THE PARTIES

Pursuant to Federal Rule of  Civil Procedure 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).

Dated:  November 1, 2017           s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Opinion and Order was served upon counsel of record on this date.

Dated:  November 1, 2017           s/ Leanne Hosking
                                   Case Manager Generalist