UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE 1; JOHN DOE 2; JOHN DOE 3;
JOHN DOE 4; JOHN DOE 5; JOHN DOE 8;
JOHN DOE 9; JOHN DOE 10 and
JOHN DOE 12,                                      No. 2:15-cv-13852

          Plaintiffs,                      HON. ARTHUR J. TARNOW

vs.                                               MAG. MONA K. MAJZOUB

DUSTIN ANDERSON; SCOTT ARP; NOAH        **THIRD AMENDED**
BEESLEY; ADAM COBURN; SERGEANT          **COMPLAINT**
CONKLIN; CO DESCHAINE; JASON ERWAY;
CHARLES GOLLNAST; MICHAEL HALL;
CO HAMMER; DUANE HEYRMAN;
TAMI HOOGEWIND; ERIK JACOBSON;
EDWARD JURANEK; JOSEPH MARTENS;
CO MCLEOD; CODY PENNELL; AIMEE ROGERS;
CO ROSS; CO SHERWOOD; RONALD STAMBAUGH;
GRETCHEN WALTERS; SCOTT SCHOOLEY;
GARY STUMP; MATTHEW WARD;
WARDEN KENNETH MCKEE; and
HEIDI WASHINGTON, Director, Michigan Department of Corrections,
*(Defendant Washington is named in her official capacity),*

          Defendants.

---

DEBORAH LaBELLE (P31595)  JENNIFER B. SALVATORE  RICHARD A. SOBLE (P20766)
ANLYN ADDIS (P76568)      (P66640)                SOBLE ROWE KRICHBAUM, LLP
Attorneys for the Plaintiffs  SARAH S. PRESCOTT (P70510)  Attorneys for Plaintiffs
221 N. Main St., Ste. 300  NAKISHA N. CHANEY (P65066)  302 E. Liberty Street
Ann Arbor, MI 48104        Salvatore Prescott & Porter, PLLC  Ann Arbor, MI 48104
(734) 996-5620             Attorneys for the Plaintiffs  (734) 996-5600
deblabelle@aol.com         105 E. Main Street      dick@srkllp.com
aaddis@sbcglobal.net       Northville, MI 48167
                           Phone: (248) 679-8711
                           salvatore@spplawyers.com
                           prescott@spplawyers.com
                           chaney@spplawyers.com

| | |
|---|---|
| MICHAEL L. PITT (P24429) | MICHAEL F. MURPHY (P29213) |
| PEGGY GOLDBERG PITT (P31407) | MICHAEL R. DEAN (P71333) |
| CARY S. McGEHEE (P42318) | ADAM L.S. FRACASSI (P79546) |
| Attorneys for the Plaintiffs | Assistant Attorneys General Attorneys |
| 117 W. 4th St., Ste. 200 | for Defendants |
| Royal Oak, MI  48067 | P.O. Box 30736 |
| (248) 398-9800 | Lansing, Michigan 48909 |
| mpitt@pittlawpc.com | (517) 373-6434 |
| ppitt@pittlawpc.com | murphym2@michigan.gov |
| cmcgehee@pittlawpc.com | deanm2@michigan.gov |
| | fracassia@michigan.gov |

## THIRD AMENDED COMPLAINT

Plaintiffs, through their attorneys, submit this Third Amended Complaint and state the following:

## INTRODUCTORY STATEMENT

1.      During the spring of 2013, Plaintiffs, youth under the age of 18 housed in adult prisons in Michigan, participated in an inquiry conducted by the Inter-American Commission on Human Rights, which resulted in a hearing focused on the violations of human rights of Michigan children held in adult prisons.  John Doe 1 testified at the hearing via a video conference tape and written submission. Following the exposure of the mistreatment of youth in Michigan facilities, these Plaintiffs filed litigation, on behalf of themselves and as class representatives on behalf of children confined in adult prisons operated by the Michigan Department of Corrections (MDOC), alleging sexual and physical abuse by adult prisoners and MDOC staff.

2.     On October 15, 2013 and December 9, 2013, Plaintiffs engaged in protected activity by exercising their 1st and 6th Amendment rights to file civil rights litigation against the MDOC, supervisory officials and Wardens in federal and state court, in the Washtenaw Circuit Court, Case No. 13-1196-CZ and in Federal Court in the Eastern District of Michigan, Case No. 13-14356.

3.     Due to the personal nature of the allegations involving rapes and sexual abuse of Plaintiffs by MDOC staff and other prisoners as incarcerated youth, and the specter of retaliation by both staff and adult prisoners for public disclosure of the abuse, the state and federal courts issued orders allowing Plaintiffs to proceed anonymously as John Does.  Protective Orders were also issued in the state court action limiting the disclosure of Plaintiffs' names to specific circumstances that would allow Defendants to defend the litigation.

4.     Despite these orders allowing Plaintiffs to proceed anonymously, there was a pattern and practice by the Defendants of disclosing Plaintiffs' identities to MDOC staff and other prisoners as a retaliatory action that subjected Plaintiffs to threats, physical injury, severe emotional distress, and further retaliatory actions for their participation in the class action litigation addressing abuse of youthful prisoners.

5.      The disclosure of Plaintiffs in a manner that subjected them to further abuse and harm was part of a concerted effort to deter Plaintiffs and other class members from participating in this litigation.

6.      Defendants engaged in retaliatory acts against Plaintiffs for exposing the abuse of youth by MDOC staff or abuse which MDOC staff, including Defendants, facilitated or failed to intervene to prevent.  The retaliation included retaliatory transfers, prolonged isolation, destruction of legal and other property, denial of visits, false misconduct tickets, excessive and destructive room searches, verbal harassment and threats, excessive pat-downs, interference with attorney communications, knowingly placing Plaintiffs in situations likely to cause them harm, and intentional disclosure of Plaintiffs' identities within the prison system, making them more vulnerable to abuse.

7.      Each of the Defendants have initiated, facilitated, and/or participated in the retaliation experienced by Plaintiffs.

8.      Plaintiffs bring this Complaint seeking damages and injunctive relief for violations of their First Amendment rights.

## JURISDICTION AND VENUE

9.      This Complaint arises from retaliation experienced by Plaintiffs at MDOC facilities located in Jackson, Macomb, Gratiot, Lapeer, Ionia, Manistee, and Baraga counties, where Plaintiffs have been housed at various times.

10.     This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. §§1331 and 1343 and pursuant to 42 U.S.C. §1983.  This action arose under the First Amendment to the United States Constitution.

11.     Joinder of the parties is appropriate pursuant to Fed. R. Civ. Pro. 19 and/or 20.

12.     The amount in controversy in this case exceeds $75,000.

13.     Venue is appropriate in this court under 28 U.S.C. §1391(b) because a Defendant resides in this District, and some of the events and occurrences occurred in this District.

## PARTIES

### A.     PLAINTIFFS

14.     Plaintiffs are citizens of the United States and at all relevant times were children when they were placed in facilities under the jurisdiction of the MDOC. Plaintiffs brought legal claims initiated in 2013 on behalf of themselves and a class of youthful prisoners held in adult correctional facilities under the jurisdiction of the Michigan Department of Corrections against the Governor, the Michigan Department of Corrections and its supervisors and wardens.

15.     Plaintiffs were retaliated against by Defendants for their participation in the litigation, which challenged the sexual and physical abuse and neglect by MDOC staff and sexual and physical abuse at the hands of adult prisoners.

5

16.    Plaintiffs are all currently incarcerated in MDOC facilities.

**B.    DEFENDANTS**

17.    Defendants are corrections officers and other MDOC officials who engaged in retaliatory conduct against one or more of the Plaintiffs because of Plaintiffs' exercise of protected conduct—filing and participation in litigation against the MDOC.  The retaliation occurred at the following MDOC facilities: Robert G. Cotton Correctional Facility ("Cotton"); Oaks Correctional Facility ("Oaks"); Bellamy Creek Correctional Facility ("Bellamy Creek"); Ionia Maximum Correctional Facility ("IMAX"); Macomb Correctional Facility ("Macomb"); Michigan Reformatory ("Michigan Reformatory"); St. Louis Correctional Facility ("St. Louis"); Alger Correctional Facility ("Alger"); and Baraga Correctional Facility ("Baraga").

18.    Defendant Anderson, Corrections Officer at Bellamy Creek, engaged in unlawful retaliation against John Doe 5.

19.    Defendant Arp, Corrections Officer at Bellamy Creek, engaged in unlawful retaliation against John Does 1, 5, 8 and 10.

20.    Defendant Beesley, Corrections Officer at Baraga, engaged in unlawful retaliation against John Doe 12.

21.    Defendant Coburn, Corrections Officer at Bellamy Creek, engaged in unlawful retaliation against John Does 1, 5, 8 and 10.

22.    Defendant Conklin, Sergeant at IMAX, engaged in unlawful retaliation against John Doe 12.

23.    Defendant Deschaine, Corrections Officer at Baraga, engaged in unlawful retaliation against John Doe 12.

24.    Defendant Erway, ARUS at Oaks, engaged in unlawful retaliation against John Doe 8.

25.    Defendant Gollnast, Corrections Officer at Macomb, engaged in unlawful retaliation against John Doe 4.

26.    Defendant Hall, Corrections Officer at Bellamy Creek, engaged in unlawful retaliation against John Doe 3.

27.    Defendant Hammer, Corrections Officer at Bellamy Creek, engaged in unlawful retaliation against John Doe 3.

28.    Defendant Heyrman, Corrections Officer at Baraga Correctional Facility, engaged in unlawful retaliation against John Doe 12.

29.    Defendant Hoogewind, Corrections Officer at Michigan Reformatory, engaged in unlawful retaliation against John Doe 2.

30.    Defendant Jacobson, Corrections Officer at Baraga, engaged in unlawful retaliation against John Doe 12.

31.    Defendant Juranek, Corrections Officer at Alger, engaged in unlawful retaliation against John Doe 9.

32.     Defendant Martens, Corrections Officer at IMAX, engaged in unlawful retaliation against John Does 2 and 12.

33.     Defendant McLeod, Corrections Officer at IMAX, engaged in unlawful retaliation against John Doe 2.

34.     Defendant Pennell, Corrections Officer at St. Louis, engaged in unlawful retaliation against John Doe 3.

35.     Defendant Rogers, ARUS at Michigan Reformatory, engaged in unlawful retaliation against John Doe 2.

36.     Defendant Ross, Corrections Officer at Bellamy Creek, engaged in unlawful retaliation against John Doe 5.

37.     Defendant Sherwood, Corrections Officer at IMAX, engaged in unlawful retaliation against John Doe 2.

38.     Defendant Stambaugh, Corrections Officer at IMAX, engaged in unlawful retaliation against John Does 2 and 12.

39.     Defendant Walters, ARUS at Bellamy Creek, engaged in unlawful retaliation against John Does 8 and 10.

40.     Defendant Schooley, Deputy Warden at Michigan Reformatory, engaged in unlawful retaliation against John Does 2 and 10.

41.     Defendant Stump, Sergeant at Bellamy Creek, engaged in unlawful retaliation against John Doe 3.

42. Defendant Ward, ARUS at Cotton, engaged in unlawful retaliation against John Doe 10.

43. Defendant Kenneth McKee, Warden at Bellamy Creek, engaged in unlawful retaliation against John Does 1, 3, 4, 5, 8 and 10.

44. Defendant Heidi Washington is the Director of the Michigan Department of Corrections. Her duties and responsibilities include developing and implementing policies and procedures for the operation and management of the Michigan Department of Corrections and its employees. She is responsible for the care, custody and protection of prisoners under the jurisdiction of the Michigan Department of Corrections. Plaintiffs seek injunctive relief only against Defendant Washington.

## **FACTS**

45. At all relevant times, the State of Michigan placed children as young as thirteen years of age, including Plaintiffs, in adult prisons under the supervision of the Michigan Department of Corrections (MDOC) without separating them from adult prisoners, despite their known, obvious and substantial vulnerability to harm from sexual and physical abuse by adult prisoners.

46. The Defendants failed to take adequate steps to protect youth under their supervision, failed to comply with the mandates of the federal Prison Rape Elimination Act of 2003 and standards promulgated thereunder. 42 U.S.C. § 15601

et seq; 28 C.F.R. 115.14 et seq. and engaged in discriminatory, abusive and degrading treatment of those youth, including Plaintiffs, under their supervision. Plaintiffs filed a lawsuit against MDOC, supervisory officers and wardens for violation of their rights under the Elliott-Larsen Civil Rights Act (ELCRA), and for federal constitutional violations.  The lawsuits were filed in state and federal courts in October and December of 2013.

47.    All of the Plaintiffs herein are plaintiffs or class representatives in the state and federal cases, which are on-going.  Defendants, and each of them, were aware of Plaintiffs' participation in the litigation either through proper or improper disclosure of Plaintiffs' identities.

48.    Plaintiffs suffered the following retaliation by the named Defendants as a result of exercising their First Amendment rights to speak out regarding the violations of their rights as set forth more fully below.

## A.    JOHN DOE 1

49.    John Doe 1 was incarcerated in an adult MDOC prison in early 2012 at age 17.

50.    On March 11, 2013, the Inter-American Commission on Human Rights held a hearing on the "Human Rights Situation of Children Deprived of Liberty with Adults in the United States."  The hearing was held based on a joint request from the

American Civil Liberties Union of Michigan and the International Women's Human Rights Clinic of the City University of New York, filed on January 10, 2013.

51.    John Doe 1 participated in the hearing via a videotaped and written statement submitted to the Commission, and in preparation for the hearing received correspondence and meetings from legal counsel.

52.    Following John Doe 1's preparation for and participation in the Inter-American Commission Hearing, at which he detailed abuse from staff and adult prisoners, Defendant Coburn, a correctional officer at the Bellamy Creek Correctional Facility, began to enter John Doe 1's cell on nearly a daily basis to look through his correspondence and legal property, which included correspondence related to potential litigation on sexual abuse of youth in MDOC facilities.

53.    On or about May 28, 2013, Defendant Coburn falsely announced over a loudspeaker that John Doe 1 was "HIV positive and needed to start his treatment." When John Doe 1 complained, Defendant Coburn told him to "go call his lawyers."

54.    Following the denial of his grievances, Defendant Coburn and Defendant Arp again began entering John Doe 1's cell on a daily basis, destroying property, including his art work and family pictures.

55.    John Doe 1 filed suit on October 15, 2013 and December 9, 2013, alleging violations of his rights for MDOC's and its officials' and employees' deliberate indifference to the safety of youth in their care and custody.   The

complaint details repeated anal rapes of John Doe 1 by adult male prisoners in his cell and in the shower. The complaint provides facts that over an extended period, corrections officers witnessed men cycling in and out of John Doe 1's cell, sexually assaulting him. Following the filing of suit, Defendant Coburn entered John Doe 1's cell and removed all of his legal material.

56.    Defendant Coburn, along with Defendant Arp, began targeting John Doe 1 for pat down searches that were physically aggressive and made open statements and comments identifying John Doe 1 as a Plaintiff in the litigation, telling other prisoners which cell he could be found in, and accusing John Doe 1 of filing a false complaint. The statements of Defendants Coburn and Arp were made in front of other prisoners, disclosing John Doe 1's status as one of the Plaintiffs in the litigation, reporting sexual assaults by other prisoners and staff, endangering John Doe 1.

57.    In February 2014, John Doe 1 stopped getting legal mail from his attorneys.

58.    As a result of all the harassment and retaliation, John Doe 1 requested that he be transferred to a Level I facility, consistent with his true custody level instead of being kept at a Level IV facility. John Doe 1 was advised that he would not be moved because of his participation in the litigation.

59.     John Doe 1 believes that this denial and lack of programming due to Level IV placement contributed to the denial of his parole.

60.     On or around June 2, 2015, Plaintiff was in the law library typing a letter to his attorneys and Defendant Arp told John Doe 1 to give him the letter. When John Doe 1 refused to give Defendant Arp the confidential communication, Defendant Arp issued John Doe 1 a misconduct.  John Doe 1 was advised that he would get less punishment if he did not contest the misconduct.  John Doe 1 was then given a 15 day loss of privileges for refusal to give attorney correspondence to Defendant Arp and was barred from the law library for six months.  John Doe 1 lost phone calls, visits and recreation.  Prior to this retaliatory misconduct John Doe 1 had zero points.

61.     The retaliation against John Doe 1, following his participation in the state and federal court litigation regarding the above abuse, continued until his release as set forth in Count I.

**B.     JOHN DOE 2**

62.     John Doe 2 was incarcerated in an adult MDOC prison in early 2011 when he was 16 years old, where he was brutally beaten and raped by his adult cellmate at the Thumb Correctional Facility in Lapeer, Michigan.  An MDOC staff member at the Thumb facilitated the abuse and assault by opening John Doe 2's cell

to allow adult prisoners to assault him in his cell, and failed to give him medical treatment despite documented rectal bleeding after the assaults.

63.     John Doe 2 filed litigation in the state and federal courts on October 15, 2013 and December 9, 2013, regarding his abuse and as a result, suffered a pattern of retaliatory actions for his participation in these class actions.

64.     Beginning in the summer of 2014 at the Michigan Reformatory, John Doe 2 began to have his cell routinely searched and property destroyed and legal material confiscated.

65.     During one of the cell searches, Defendant Schooley confiscated Plaintiff's journal, in which he detailed his ongoing abuse and harassment and turned the journal over to the Assistant Attorney Generals representing the Michigan Department of Corrections.

66.     Defendants Rogers and Hoogewind verbally harassed John Doe 2 and made threats regarding his participation in the litigation.  Defendants also publically disclosed his identity and participation in the litigation.  After John Doe 2 reported that he was receiving threats from other prisoners due to the disclosure of his identity, Plaintiff was issued a false misconduct, while Defendants taunted him about the litigation.

67.     In March 2015, John Doe 2 had his security level increased to Level V and was transferred to administrative segregation at IMAX.  In the midst of the

transfer, John Doe 2's property, which contained evidence of sexual abuse and assaults that occurred at Michigan Reformatory, disappeared.  Plaintiff filed a grievance on the taking of his property.

68.    Upon arrival at IMAX, John Doe 2 was advised by several staff that they have been made aware he is a John Doe in the pending litigation.  Defendants Sherwood, Martens, and McLeod harassed John Doe 2 for his participation in the litigation and mocked him for being sexually abused.

69.    Defendants initiated a series of retaliatory actions including false misconducts, placement of John Doe 2 on food loaf, excessive room searches during which Plaintiff's property was destroyed, and legal mail read.  Defendant Sherwood refused to give John Doe 2 grievance forms for the above actions, and told him to "tell his lawyers" and "put it in his lawsuit."

70.    John Doe 2 received grievance forms from another officer and filed grievances for harassment, retaliatory searches and threats by Defendant Sherwood, and other MDOC staff.

71.    The harassment and retaliation are ongoing.

## C.    JOHN DOE 3

72.    John Doe 3 was incarcerated in an adult MDOC prison early in the fall of 2010, when he was 16 years old.  He was housed in a unit surrounded by adult prisoners in Jackson, Michigan, resulting in sexual harassment and abuse by adult

prisoners.  John Doe 3 was then transferred to the Thumb Correctional Facility in Lapeer, Michigan, where he was sexually abused by adult male prisoners on more than three separate occasions.

73.    While at the Thumb, John Doe 3 was also abused by MDOC staff who grabbed and pulled John Doe 3's genitals and sexually abused and harassed John Doe 3 during body searches, while showering and/or performing basic bodily functions.

74.    At the age of 17, John Doe 3 was transferred to the Chippewa Correctional Facility, where he was routinely sexually and physically assaulted by correctional staff by having his genitals grabbed and pulled on during body searches and sexually harassed and abused by adult male prisoners.

75.    After John Doe 3 detailed these abuses in state and federal court litigation, John Doe 3 was retaliated against by Defendants for his filing and participation in the litigation.

76.    While John Doe 3 was housed at the St. Louis Correctional Facility, in January 2014, staff began making comments about John Doe 3 being a snitch and being involved in the litigation.  Plaintiff's cell was then targeted for searches, and when Plaintiff returned to his cell, his legal documents were spread out in the cell and his family photographs had been thrown in the toilet.  Plaintiff was advised that Defendant Pennell performed the search.

77.     Defendant Pennell publicly identified John Doe 3 as a Plaintiff in the litigation and began a pattern of harassment and retaliatory actions by ordering John Doe 3 to submit to a shakedown every time he saw him.  Pennell also searched his room excessively through January and February 2014.  During one of the room searches on February 24, 2014, Plaintiff was required to go in a room for a strip search while his cell was searched.  When Plaintiff returned, his journal, which he had been keeping for the litigation, was missing.  Plaintiff was never given a contraband slip.

78.     When John Doe 3 was later transferred to the Bellamy Creek Correctional Facility he was immediately identified as a John Doe, and Defendant McKee authorized and directed a sign to be posted outside Plaintiff's cell that read "do not interview."  Staff understood this sign as identifying Plaintiff as a John Doe in the sexual abuse lawsuit and staff disclosed this information to other prisoners who harassed and taunted John Doe 3.

79.     While at Bellamy Creek, Defendants Hall, Hammer and Stump taunted Plaintiff about his participation in the litigation, physically assaulted him on multiple occasions and excessively searched his cell, ripped up his legal documents, and destroyed property.

80.     John Doe 3 filed grievances regarding the room searches, improper treatment of his legal documents, harassment and physical assaults.  After John Doe

3 filed grievances against these Defendants, Defendants Stump and Hammer threatened Plaintiff and then issued false misconducts for insolence against John Doe 3 on October 10, 2015.

81.    On October 21, 2015, Plaintiff was told to cuff up and placed in a closet before Defendant Stump searched his cell.  After the cell search Defendant Hammer alleged that he found a weapon in Plaintiff's cell resulting in the issuance of a false misconduct and Plaintiff losing his programming and job, endangering his parole.

82.    The harassment and retaliation are ongoing.

**D.    JOHN DOE 4**

83.    John Doe 4 was 16 years old when he was incarcerated in the Thumb Correctional Facility, where he was subjected to physical and sexual assaults and abuse by MDOC staff including an assault by a female MDOC staff member who repeatedly opened John Doe 4's cell for purposes of engaging in coerced sexual intercourse with him.

84.    John Doe 4, following his participation in the state and federal court litigation regarding the above abuse, has been subjected to a pattern of retaliation at the facilities he was housed in, by the following acts of Defendants:

85.    While John Doe 4 was at the Thumb, his identity as a Doe Plaintiff was publically disclosed resulting in humiliation and harassment by staff and other prisoners.

86.     Upon his transfer to Macomb, Defendant Gollnast went through his legal property and announced to prisoners and staff that John Doe 4 was claiming he had been raped and that he was a Doe Plaintiff, subjecting Plaintiff to continuing harassment and threats.

87.     Upon transfer to Bellamy Creek, Plaintiff was harassed by being issued a false sexual misconduct ticket, interference with attorney telephone calls, and ongoing harassment regarding his status as a John Doe.

88.     The harassment and retaliation are ongoing.

## E.     JOHN DOE 5

89.     John Doe 5 was first incarcerated in an adult MDOC prison in September of 2011 at the age of 16, where he was placed in a cell with an adult prisoner and physically assaulted and anally raped by his adult cellmate.

90.     John Doe 5 was also subjected to humiliating and extreme sexual harassment, comments and sexual touching and abuse by MDOC female staff at the Thumb Correctional Facility and was repeatedly raped in his cell by adult prisoners at LRF.  MDOC staff were aware of assaults and aware that adult male prisoners were paying John Doe 5's cellmate for access to John Doe 5 for purposes of sexually assaulting him.  Defendants failed to take any action to intervene to prevent the sexual trafficking of John Doe 5 or protect John Doe 5 from abuse.

91.     John Doe 5 was repeatedly sexually abused and sexually harassed at URF and physically assaulted when he attempted to resist.  MDOC staff at URF were aware of the abusive conduct directed toward John Doe 5 by adult prisoners, refused to provide him with requested protective custody, and threatened him with disciplinary tickets.  After transfer to DRF, John Doe 5 was again sexually abused, assaulted and raped by two adult male prisoners on separate occasions in a shower area.

92.      John Doe 5, following his participation in the state and federal court litigation regarding the above abuse, was subjected to a pattern of retaliation for his participation in the litigation.

93.     In preparation for the filing of the litigation, Plaintiffs' counsel visited, called and exchanged written information with John Doe 5 while he was held at the Bellamy Creek Correctional Facility.

94.     On October 10, 2013, Defendant Coburn told John Doe 5 he knew he was filing a lawsuit and his stay was going to be a lot harder.  Immediately after the lawsuit was filed and before it was served, Defendant McKee was advised of the lawsuit and the identity of John Doe 5 as a Plaintiff.  Defendant McKee subsequently authorized the placement of a "do not interview" sign outside of John Doe 5's door.

95.     John Doe 5 began to receive harassment from Defendant Coburn who identified John Doe to other prisoners and relayed the details of the complaint to

other prisoners and staff.  Defendant Coburn began shaking down John Doe 5's cell on a daily basis, either by himself or with the assistance of other officers.  After the shakedowns, Plaintiff's legal materials were left open and spread out across his bed.

96.    Defendants Coburn and Arp continued to threaten John Doe 5 about his lawsuit, telling him he should drop it if he ever wanted to go home, refusing to call him out for his work and program details and encouraging other prisoners to take action against him.

97.    Following Defendant Coburn's and Arp's actions, Plaintiff John Doe 5 was assaulted by another prisoner and placed in segregation.

98.    The person who assaulted John Doe 5 was found guilty of threatening behavior and spent less than a month in segregation.  John Doe 5 was held in administrative segregation for nine (9) months for admitting that he warned his assaulter if he ever hit him again he would "slap him."

99.    While in segregation at Bellamy Creek, Defendant Ross refused Plaintiff food and told other prisoners they should pay attention to what happens to John Doe 5, and then decide if it's worth it to snitch and sue the MDOC.  John Doe 5 was told that he was being held in segregation for so long because of the litigation.

100.   John Doe 5 continued to have his cell searched, his legal property spread out, and continued to receive harassment and threats regarding his participation in the litigation.

101.   Defendant Anderson went through Plaintiff's legal work and read it out loud to staff and prisoners while Plaintiff was showering.  When Plaintiff returned some prisoners were laughing and asking him about the rapes.  Others threatened to hurt him for reporting.

102.   The harassment and retaliation are ongoing.

**F.   JOHN DOE 8**

103.   John Doe 8 was incarcerated in an adult MDOC prison at the age of 17, where he was raped in the shower by an adult male prisoner and sexually assaulted and abused by other adult male prisoners.  As a result of the sexual abuse, John Doe 8 contracted genital warts.

104.   After being sexually assaulted, John Doe 8 spent more than 10 weeks in isolation for protective purposes.  He was on suicide watch and has attempted suicide on multiple occasions.

105.   John Doe 8, following his participation in the state and federal court litigation regarding the above abuse, was subjected to a pattern of retaliatory acts by Defendants.

106.   Prior to John Doe 8 being added as a Plaintiff, counsel met, wrote and spoke to him while incarcerated at the Oaks Correctional Facility.  In February 2015, John Doe 8 was added as a Plaintiff and class representative in the pending litigation.

107.   Shortly after the attorney communications, John Doe 8 started getting his room shook down.  During one period his room was searched five (5) days in a row.  After the room searches, Plaintiff's legal property and papers were left open and strewn around the room.   Plaintiff's personal property was taken and/or destroyed and Plaintiff began to be singled out for minor infractions and issued misconduct tickets.

108.  Plaintiff complained to Defendant Erway regarding harassment. Defendant Erway responded by arranging for Plaintiff's transfer resulting in the loss of his opportunity to participate in programming required for Plaintiff's parole.

109.   Plaintiff filed a grievance for retaliatory transfer and harassment against Defendant Erway.

110.   Upon his transfer to Bellamy Creek, Plaintiff John Doe 8 was subjected to a series of petty misconducts and harassment due to his being a participant in the litigation.  Defendant Walters refused Plaintiff's request for help and protection stating she could not talk to him because he is a John Doe. Defendant Coburn and Defendant Arp verbally harassed and threatened John Doe 8 about the litigation in front of other prisoners and staff. As a result of the harassment and the comments of other prisoners, John Doe 8 believed he was in danger for reporting abuse and participating in the litigation.

111.   The harassment and retaliation is ongoing.

### G.    JOHN DOE 9

112.   John Doe 9 was incarcerated in an adult MDOC prison in September 2011 when he was 17 years old. While at Chippewa Correctional Facility, John Doe 9 was targeted with sexual harassment and abuse and threats of violence by an adult prisoner. The adult prisoner would make John Doe 9 clean his shoes and clothes, would take his things, and would regularly grope and pull on his genitals and grab his buttocks.

113.   John Doe 9 was transferred to Kinross Correctional Facility, where John Doe 9 was threatened with physical violence by older prisoners, and sexually abused by a male MDOC staff member.  The staff member took John Doe 9 to remote areas of the prison for strip searches, where he would grope his body and grab his genitals.  The male staff member also sexually harassed John Doe 9 while he was showering and/or performing basic bodily functions.

114.   While at Kinross, John Doe 9 was anally raped by an adult prisoner in the shower.

115.   In October 2014, counsel began meeting with John Doe 9 for purposes of adding him as a Plaintiff and class representative to the on-going litigation. Following these meetings and continuing through John Doe 9's participation in the state and federal court litigation, he was subjected to a pattern of retaliatory actions by Defendants.

116.   After Plaintiff met with Plaintiffs' counsel, spoke on the telephone and received legal mail, staff at Alger Correctional Facility learned he was involved in the litigation.  John Doe 9 began to receive harassment from staff regarding attorney communications, including from Defendant Juranek.

117.   Defendant Juranek subjected Plaintiff to a series of harassing room searches and would degrade John Doe 9 about his involvement in the litigation. When Defendant Juranek would observe Plaintiff in the hallway, he would call over the loudspeaker, "I need the rape victim to report to the bubble, this is a direct order."

118.   As a result of these comments and harassment, Plaintiff John Doe 9 believed he was in danger for his reporting abuse and participation in the litigation. He began to receive threats from other prisoners.

119.   The harassment and retaliation are ongoing.

## H.   JOHN DOE 10

120.   John Doe 10 was incarcerated in an adult MDOC prison in late 2010, when he was 16 years old.  He was housed with older adult prisoners who sexually and physically assaulted him at the Thumb Correctional Facility in Lapeer, Michigan.

121.   When John Doe 10 was 17 he was transferred to the Saginaw Correctional Facility where he was sexually assaulted in the shower by an older adult prisoner and sexually abused and physically assaulted by other adult prisoners.

122.   In October of 2014, counsel began meeting with John Doe 10 for purposes of adding him as a Plaintiff and class representative.  Following these meetings and continuing through John Doe 10's participation in the state and federal court litigation, he was subjected to a pattern of retaliatory actions by Defendants.

123.   After Plaintiff John Doe 10 met with Plaintiffs' counsel, spoke on the telephone with counsel and received legal mail, staff at Cotton Correctional Facility became aware of Plaintiffs' involvement in the litigation.  Plaintiff John Doe 10, began to receive comments and harassment from staff, including from ARUS Ward regarding his attorney communications.

124.   As a result of these comments and comments from other prisoners, Plaintiff John Doe 10 believed he was in danger for his reporting his abuse and participation in the litigation.  On or around December 5, 8 and 9, 2014, Plaintiff asked for placement in protective custody.  Only after Plaintiff was assaulted by another prisoner was Plaintiff placed in temporary segregation.  While in temporary segregation, all Plaintiff's legal work, papers and property were taken.

125.   Plaintiff filed a grievance regarding his loss of property, and requested to be placed in long term protective custody.  Defendant Ward harassed Plaintiff regarding the litigation and told John Doe 10 that he wouldn't have been assaulted if he wasn't gay, he should be ashamed and why is he still alive.  John Doe 10 filed a grievance against Defendant Ward.

126.   On or around December 19-22, 2014, John Doe 10 was placed on suicide watch.  After release, he received some property but the amended complaint adding John Doe 10 as a Plaintiff was missing.

127.   Plaintiff was subsequently denied a contact visit with his counsel and harassment by other staff and other prisoners increased.  John Doe 10's placement in long term protective custody was denied and he was transferred to Michigan Reformatory.

128.   Shortly after his transfer, John Doe 10 was stabbed 27 times by prisoners aware of his John Doe status.  John Doe 10 was then placed again in temporary segregation.

129.   While in temporary segregation other prisoners threw trash and called him a snitch.  Defendant Schooley was aware of the acts of other prisoners and refused to intervene.  Defendant advised John Doe 10 that he cannot be placed in long term protective custody without approval of Lansing due to his status as a Doe. Plaintiff was then transferred to Bellamy Creek.

130.   On or about April 8, 2014, Plaintiff John Doe 10 participated in a Doe class meeting at Bellamy Creek and three days later Defendant Coburn searched Plaintiff's cell twice a day during the same shift and Plaintiff's property was strewn about.

131.   On or about April 18, 2014, Defendant Coburn singled out Plaintiff for punishment stating it was because "you're suing the state and you're gay." Defendant Coburn taunted John Doe 10 over the intercom, mocked kissing him, threatened him and stated "now go tell your lawyer."

132.   Defendants Coburn, Arp and Walters added John Doe 10 to their pattern of harassing John Does in their units by engaging in verbal harassment, punishment and refusing to call Plaintiff out for his detail as a porter, requiring arbitrary pack ups, searching Plaintiff's cell excessively, and telling other officers to destroy items in Plaintiff's cell.

133.   After John Doe 10 filed grievances for retaliation and harassment, Defendant Coburn and Defendant Arp threatened Plaintiff with misconducts, loss of programs and more time in prison if he complained about retaliation again.

134.   The harassment and retaliation are ongoing.

## I.   JOHN DOE 12

135.   John Doe 12 is currently a prisoner at an adult prison under the jurisdiction of the MDOC and was incarcerated at an adult prison in 2010 when he was 17 years old.

136.   During his incarceration at the Charles Egeler Reception and Guidance Center ("RGC"), John Doe 12 was surrounded by adult prisoners, where he was targeted with sexual harassment, threatened and placed in isolation when he reported

the abuse.  John Doe 12 was 17 years old when he was transferred to the Mound Facility in January 2011, where he was sexually abused and raped by two adult prisoners in his cell.  As a result of the sexual abuse, John Doe 12 contracted genital warts.

137.   At Alger Correctional Facility, John Doe 12 was sexually harassed, abused, pressured for sex and threatened by adult male prisoners.

138.   In May 2015, John Doe 12 met with counsel to discuss joining the federal litigation.

139.   Prior to being added as a Plaintiff, John Doe 12 received correspondence and draft legal documents from counsel.  On or around March 20, 2015, Plaintiff filed a grievance due to his legal mail related to the federal Doe case being opened out of his presence.  Following the opening of his legal mail, Plaintiff's room began to be searched excessively and his property and legal material destroyed while housed at the Baraga Facility.  Plaintiff filed a grievance against Defendant Beesley for destructive searches and threatening comments against Plaintiff and other youth for bringing the lawsuit.

140.   During the May attorney visit, Defendant Beesley encouraged other staff to flip John Doe 12's cell.  John Doe 12 returned to find shampoo poured over his family pictures and his cell in disarray.  Defendant Beesley threatened John Doe 12 if he continued with the litigation.

29

141.   After Plaintiff filed a grievance for excessive cell searches and harassment, Defendant Beesley retaliated by physically assaulting Plaintiff and telling him to keep Defendant Beesley's name and any other correctional officer's names out of his litigation.

142.   After Plaintiff joined the litigation, Defendants Deschaine and Heyrman told other prisoners and staff that John Doe 12 claimed he had been raped before and mocked and taunted him with more abuse.   Plaintiff John Doe 12 continued to receive destructive cell searches, loss of legal property, denial of privileges and threats from Defendants about the litigation.

143.   Plaintiff John Doe 12 was placed on a grievance restriction on or around June 23, 2015 because of the grievances he had filed, and other staff advised him that they will side with Defendant Beesley.

144.   On or around June 29, 2015, Defendant Jacobson physically assaulted Plaintiff, ordered him to strip and forced him to expose himself to other prisoners during a shakedown while Plaintiff was using the bathroom.   Plaintiff's room was then destroyed and Defendant Jacobson told Plaintiff to stop grieving Defendant Beesley, stating "see what your lawyer is getting you into?"

145.   Plaintiff's attempts to file grievances were rejected.

146.   Plaintiff was transferred to IMAX where Defendant Conklin taunted him about his status as a John Doe and warned him about being involved in the

litigation.  Later that day, Plaintiff was gassed by Defendant Conklin, and placed in hard restraints during the time he was scheduled for a visit with his attorney.

147.   At IMAX, Defendants Marten and Stambaugh told Plaintiff they knew he was a John Doe and a "butt boy" and made threatening statements regarding his filing a lawsuit against MDOC and getting staff in trouble.

148.   The harassment and retaliation are ongoing.

## COUNT I
## First Amendment Retaliation
## 42 U.S.C. § 1983

149.   Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

150.   Plaintiffs engaged in constitutionally protected conduct, and had a clearly established constitutional right to be free from retaliation by Defendants, for filing a lawsuit against MDOC and prison officials complaining about their conditions of confinement and for speaking to the press regarding those claims.

151.   Defendants were aware of the fact that Plaintiffs engaged in this protected activity.

152.   Following the filing of the state and/or federal court lawsuits, and/or participation in attorney meetings in connection with those cases, Defendants, acting with indifference with regards to Plaintiffs' federally protected rights, targeted Plaintiffs because they engaged in protected activity in the following ways:

a. Plaintiff John Does have been subjected to verbal abuse, and called degrading names such as "bitch," "fag," "rat," and "butt boy" by Defendants in regards to their participation in the litigation.  Many of these comments, as well as references to the Plaintiffs' participation in the litigation, were made in front of other prisoners and MDOC staff, resulting in abusive questioning and threats of harm directed toward Plaintiffs.

b. Since their attendance at meetings with counsel in the litigation, Plaintiffs who attended the meetings have been mocked and harassed by Defendants in regards to their involvement in the litigation.

c. Plaintiff John Does have had their identity exposed by Defendants, resulting in increased threats and harm.

d. Plaintiff John Does have been subjected to excessive cell searches since their involvement in the litigation.

e. During the searches Defendants removed legal documents from the possession of Plaintiff John Does.  On multiple occasions, MDOC staff have read portions of the documents out loud to other prisoners and staff, disclosing the content of Plaintiffs' deposition testimony to staff and prisoners.

f.  Legal documents were taken from John Doe 2's possession by Defendant Deputy Warden Schooley at Michigan Reformatory, which were turned over to Defendant's counsel for use in the litigation.

g.  While John Doe 5 was in the shower, a corrections officer at IBC (Defendant Anderson) went through his legal work and read it aloud to MDOC staff and other prisoners.  When John Doe 5 returned, prisoners were laughing and asking questions about the abuse he experienced.

h.  Defendants have threatened and taunted Plaintiffs and class members about their involvement in this litigation.

i.  John Doe 5 was held in solitary confinement at IBC for nine months as a result of reporting sexual abuse by another prisoner to MDOC staff. Following the nine months in solitary, John Doe 5 was moved to Oaks Correctional Facility, where he was placed in the same unit as one of the individual perpetrators who he had identified in his deposition.  That perpetrator subsequently began harassing John Doe 5 and asking why he "told on him."

j.  John Doe Plaintiffs have been subjected to increased strip searches and pat downs, room searches and excessive punishment, and verbal harassment and threats.

k. John Doe Plaintiffs have been targeted for a greater number of body and room searches, and have experienced increased intrusiveness in those searches.   The searches often occur in or around attorney communications (attendance at class meetings, receipt of legal mail, attorney-client telephone calls or visits from attorneys).   During cell searches, legal documents have been read, ripped up and thrown around Plaintiffs' cells.

l. John Doe Plaintiffs have been harassed by Defendants about the content of attorney-client communications and group meetings, and their involvement and claims in this litigation.

m. Following an attorney visit at Bellamy Creek, John Doe 5 was required to perform a strip search, during which he was questioned about this litigation.

n. John Doe Plaintiffs have been targeted for improper misconduct tickets. For example, John Doe 1 was issued a Class II misconduct ticket for refusing to allow a corrections officer to read a letter being typed to his attorney, and John Doe 10 was issued a Class II misconduct ticket for Interference with Administrative Rules after filing a grievance on retaliatory harassment by MDOC staff at Bellamy Creek that could not be substantiated.

o. John Does 1, 2, 3, 5, 8, and 10 have also been targeted for minor rule infractions normally overlooked by staff.  By way of example, John Doe 8 was issued a Class III misconduct ticket for handing noodles to another prisoner; John Doe 3 was issued a Class III misconduct ticket for giving leftover food from his tray to another prisoner in the chow hall; and John Doe 10 was issued a Class III misconduct ticket for taking a small amount of food from the chow hall.

153.  Defendants' actions have resulted in harm to Plaintiffs including physical and emotional harm and harsher terms of confinement.  Defendants' actions have also been intended to and have in fact interfered with the prosecution of the state and federal litigation, and have discouraged Plaintiffs' as well as other class members' participation in the litigation and willingness to speak out about abuses they have experienced.  To that end, Defendants' actions would deter a person of ordinary firmness from continuing to engage in the protected conduct.

154.  Defendants' actions against Plaintiffs were the proximate cause of the violations of federally protected First Amendment rights.

155.  At all relevant times, Defendants acted under color of state law, using their positions of power, title and authority to unlawfully retaliate against Plaintiffs.

156.  There was no legitimate government interest in the retaliation and otherwise unlawful conduct against Plaintiffs.

157.   Defendants' unlawful acts violated Plaintiffs' clearly established constitutional rights, including the right to be free from retaliation for filing a lawsuit against prison officials and for speaking with the press about abuses in prison.

158.   It would be clear to a reasonable officer that such conduct was unlawful.

159.   Plaintiffs continue to suffer harm as a result of Defendants' misconduct.

160.   The retaliatory acts and harassment against John Does 2, 3, 4, 5, 8, 9, 10 and 12 is ongoing.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court:

A.     Award damages to Plaintiffs for harm caused by Defendants' violations of law, including punitive and exemplary damages where appropriate;

B.     Enjoin Defendants from further acts of retaliation against Plaintiffs;

C.     Establish a process for independent reporting and review of misconducts issued against Plaintiffs to determine if the misconducts are retaliatory.

D.     Establish a procedure for direct review and response to Plaintiffs' grievances regarding retaliatory acts; and

E.     Award the reasonable costs and expenses incurred in the prosecution of this action, including reasonable attorneys' fees and costs.

F.     Other relief as justice requires.

Respectfully submitted,


/s/ Deborah LaBelle
DEBORAH LaBELLE (P31595)
ANLYN ADDIS (P76568)
Attorneys for the Plaintiffs
221 N. Main St., Ste. 300
Ann Arbor, MI  48104
(734) 996-5620
deblabelle@aol.com
aaddis@sbcglobal.net

/s/ Michael L. Pitt
MICHAEL L. PITT(P24429)
PEGGY GOLDBERG PITT (P31407)
CARY S. McGEHEE (P42318)
Pitt McGehee Palmer Rivers
& Golden PC
Attorneys for Plaintiffs
117 W 4th St., Ste. 200
Royal Oak, MI  48067
Phone: (248) 398-9800
mpitt@pittlawpc.com
ppitt@pittlawpc.com
cmcgehee@pittlawpc.com


/s/ Nakisha N. Chaney
NAKISHA CHANEY (P65066)
JENNIFER B. SALVATORE (P66640)
Salvatore Prescott & Porter, PLLC
Attorneys for Plaintiffs
105 East Main Street
Northville, MI 48167
(248) 679-8711
salvatore@spplawyers.com
chaney@spplawyers.com


Date:  January 3, 2018

## DEMAND FOR TRIAL BY JURY

NOW COME Plaintiffs, by and through their counsel, and hereby demand a trial by jury as to all of those issues so triable as of right.

Respectfully submitted,

*/s/ Deborah LaBelle*

DEBORAH LaBELLE (P31595)
ANLYN ADDIS (P76568)
Attorneys for the Plaintiffs
221 N. Main St., Ste. 300
Ann Arbor, MI  48104
(734) 996-5620
deblabelle@aol.com
aaddis@sbcglobal.net

*/s/ Michael L. Pitt*

MICHAEL L. PITT(P24429)
PEGGY GOLDBERG PITT (P31407)
CARY S. McGEHEE (P42318)
Pitt McGehee Palmer Rivers
& Golden PC
Attorneys for Plaintiffs
117 W 4th St., Ste. 200
Royal Oak, MI  48067
Phone: (248) 398-9800
mpitt@pittlawpc.com
ppitt@pittlawpc.com
cmcgehee@pittlawpc.com

*/s/ Nakisha N. Chaney*

NAKISHA CHANEY (P65066)
JENNIFER B. SALVATORE (P66640)
Salvatore Prescott & Porter, PLLC
Attorneys for Plaintiffs
105 East Main Street
Northville, MI 48167
(248) 679-8711
salvatore@spplawyers.com
chaney@spplawyers.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 3, 2017, the foregoing document was electronically filed with the Clerk of the Court using the Court's electronic filing system, which will send notification of such filing to all counsel of record.

Dated: January 3, 2017                    /s/ Tara L. Lank

Tara L. Lank, Legal Secretary